PETTY *v.* FOGLE *et. al.*

Decided April 24, 1880.

| 16 | 497 |
| 39 | 131 |
| 16 | 497 |
| 42 | 446 |
| 16 | 497 |
| 54 | 562 |
| 16 | 497 |
| 58 | 339 |

1880
Special Term.

Petty
v.
Fogle *et al.*

1. Generally a bill is multifarious, when it unites distinct and independent matters, in which a part of the defendants are interested in and connected with a part of such matters, and have no interest in or connection with the other matters in the bill as to which relief is prayed, in which another defendant or defendants are interested and connected. And a bill may be multifarious for other causes.

2. For such multifariousness the bill is demurrable.

3. Courts of equity have jurisdiction of matters of account. First, where there are mutual demands, and *a fortiori* when complicated; Second, when the accounts are on one side, and a discovery is sought that is material to the relief; Third, equity having taken jurisdiction for discovery will, to avoid multiplicity of suits, administer suitable relief. Courts of equity decline jurisdiction in matters of accounts. First, where the demands are all on one side, and no discovery is claimed or is necessary; Second, where on one side there are demnads, and on the other mere payments or sets-off, and no discovery is sought or required, *Lafeur* v. *Billmyer et al.*, 5 West Va. 33. While these propositions are in the main generally correct, still they do not embrace all the cases as to matters of account, in which equity should or should not take jurisdiction. It seems that no general rule embracing all cases as to matters of account, in which equity will or will not take jurisdiction, can with propriety be safely laid down.

4. Sometimes the word "or" is made in contracts to mean "and," when it is proper in order to carry out the obvious meaning of the parties to the contract.

63

5. A case in which a court of equity should not take jurisdiction of a bill for a settlement of account as against certain defendants. See statement of the case and opinion of the court.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Wood, rendered on the 13th day of March, 1877, in a cause in said court then pending, wherein E. W. Petty was plaintiff, and E. D. Fogle and others were defendants, allowed upon the petition of said Petty.

Hon. J. M. Jackson, judge of the fifth judicial circuit, rendered the decree appealed from.

HAYMOND, JUDGE, furnishes the following statement of the case:

In 1874 the plaintiff filed his bill against the defendants in the circuit court of the county of Wood, which is as follows viz:

" *To the Hon. J. M. Jackson, Judge of the Circuit Court of Wood county :*

" The bill of complaint of E. W. Petty, plaintiff, against Evans D. Fogle, William Hamilton, J. B. Blair, C. H. Shattuck, William T. Williams and John Burgess, defendants, filed in the said court :

" The plaintiff complains and says that on the 13th day of March, 1861, the said Evans D. Fogle, James R. Utt, since deceased, and the said plaintiff, entered into an agreement in writing, and under seal of the contracting parties, with the said William Hamilton and the other above named defendants, excepting said Fogle, which recited that, whereas, on the 23d day of February, 1860, the said plaintiff executed a paper, purporting to be a lease to J. T. Johnston and others therein named for the exclusive oil-privilege of the farm on which the plaintiff then resided, situated on Burning Springs Run, in the county of Wirt, and supposed to contain about 207 acres ; and further reciting that the said Johnston and others had assigned all their right and title under the

said lease to the said William Hamilton and others therein also named ; and further reciting that on the 8th day of March, 1861, the said plaintiff had executed a paper-writing, purporting to be a lease to the said Fogle and Utt, for the said oil-privilege of said farm, or part thereof; and further reciting that a misunderstanding had arisen or existed between the parties of the first and second parts to the first above mentioned agreements, a to their respective rights under said instrument of writing. To avoid litigation, and to amicably adjust all coming difficulty and dispute between said parties, the first above named agreement bearing date the 13th day of March, 1861, was entered into, in which, amongst other things and provisions, it was covenanted that John R. Boggess and James Evans, surveyors, should go upon the land aforesaid and lay off the same into lots, ten poles square, and number the same, and assign to one of the said parties, (the parties of the first part to said last mentioned agreement, towit, the agreement of March 13, 1861,) the lots being the odd numbers, and to the other of said parties, (the parties of the second part to said last named agreement,) the lots being the even numbers, and make out a fair plat which should be recorded in the clerk's office of the county court of said Wirt county. And in and by the said agreement other stipulations and conditions followed respecting the manner and extent of the use of said lots so laid off, and the reservations and rents thereof. And it was further agreed that the parties to the said last mentioned agreements of the first and second parts should respectively pay the taxes aforesaid—the county and State purposes—on the lots assigned to them. All which will more fully and at large appear by reference to a certified copy of said last mentioned agreements filed herewith, and prayed to be taken and read as a part of this bill, marked "A."

" And the plaintiff further says that the said surveyors did lay off by survey the said two hundred and seven

acres into lots ten rods square and numbered the same from one to three hundred and thirty five, inclusive, and made a plat of the same, and the same was recorded as stipulated, a copy of which is filed herewith, marked " B," as a part of this bill.

" And the plaintiff further says that the said odd lots were assigned and allotted to the said Evans D. Fogle, James R. Utt and the said plaintiff, and the even lots were assigned and allotted to the said Hamilton, Blair, Shattuck, Williams and Burgess, according to the terms of the said last mentioned agreement.

" And the said plaintiff further says that in and by the terms and covenants of said agreement, the said parties thereto were to pay the State and county taxes on their respective allotments—that is to say, the parties to the first part to said agreement were to pay on their lots the taxes aforesaid that might be assessed or levied to the extent of one half of said land, and the parties of the second part of said agreement were to pay the like on their lots to the same extent; and the title in fee remaining in the said plaintiff, it was of course understood that the State and county would continue to assess and charge the taxes upon the whole of said farm to the said plaintiff as a whole, and that there was no way by which the said taxes, or any part thereof, could be distributed upon the various specific allotments; but that each general division composed of said respective parties should and would pay their portion of the said taxes as agreed.

" And the plaintiff further says that the said above named defendants have not at any time paid the said taxes, or any part thereof, except about $10.00 or $15.00 paid upon the said lots so assigned to them, or their proportion of the same, due upon the whole tract of land ; that the said plaintiff has always paid each year the whole of the said taxes down to and including the taxes of 1871; and also your orator's property was sold to satisfy a portion of the taxes for the year 1872, and been compelled so to do or suffer his said land to be delinquent and sold

for the taxes. thereon; that the defendants, although often promising, have failed and now refuse to pay their portion of the said taxes due the said State and county upon said land and the portion thereof they agreed to pay as aforesaid; that the amount of taxes and the interest thereon for each year for State, county and township purposes, since the year 1861, is, to wit, the sum of $———, as will appear by reference to an account filed herewith, marked " C," as a part of this bill.

"And the plaintiff further says that the said James R. Utt has long since departed this life, and had at the time of his decease no interest in the subject of this suit; that the said Evans D. Fogle is indebted to the plaintiff on account of the taxes aforesaid due on the lots assigned to the plaintiff, and said Fogle and Utt in the sum of $———; and that the said defendants, William Hamilton, William T. Williams and John Burgess are non-residents of this State; that J. B. Blair and C. H. Shattuck are residents of the said county of Wood. And the plaintiff further says that owing to the peculiar character of the said last named agreement, and the nature of the demand of the said plaintiff, and the inconvenience if not impossibility of having a complete and satisfactory adjustment of the respective rights and interests and claims against the said defendant settled in an action at law, such a remedy would be inadequate to the purpose, and unavailing to this plaintiff; that the said plaintiff is entitled to an account of the taxes due from the said defendants or tenants in common of said land under said agreement, and the right to compel the said defendants to the payment of the same as he is advised. The said plaintiff files herewith the tax-bills and duplicates paid by him on the said land, and prays that same may be taken and read as a part of this bill. Therefore the plaintiff prays that the said above named defendants may be made parties to this bill; that they answer the same upon oath; that said plaintiff may have a decree against the said defendants for the said amounts, respectively, due on account

of the said taxes, and that the plaintiff may have such other, further and general relief in the premises as to equity may seem meet. And as in duty bound he will ever pray, &c."

Exhibit "A" filed with the bill is as follows, viz :

"This agreement, made this 13th day of March, 1861, between Evans D. Fogle, James R. Utt and Enoch W. Petty, of the one part, and William Hamilton, Jacob B. Blair, Charles H. Shattuck, William T. Williams and John Burgess, of the other part, witnesseth :

"That whereas, on the 23d day of Febuary, 1860, the said E. W. Petty executed a paper-writing purporting to lease to J. T. Johnston, R. G. Work and the said C. H. Shattuck the exclusive oil-privilege of the farm on which he then resided and now resides, situated on Burning Spring run, in the said county of Wirt, and supposed to contain about two hundred and seven acres ; and whereas, the said Johnston and Work have assigned all their right and title under said lease to the parties of the second part; and whereas, on the 8th day of March, 1861, the said E. W. Petty executed a paper-writing purporting to lease to the said Fogle and Utt the said oil-privilege of said farm, or a part thereof; and whereas, a misunderstanding existed between the parties of the first and second part as to their respective rights under said instruments of writing : Now, in order to avoid litigation, and amicably adjust all causes of difficulty and dispute between the said parties, it is hereby agreed by the parties of the second part that the said lease executed to said Johnston, Work and Shattuck, on the 23d day of February, 1860, be and the same is hereby modified.

"And the said parties of the first and second parts mutually release to each other all their right and claim under the same, except as is hereinafter provided. And the parties of the first and second parts further agree, that John R. Boggess and James Evans, surveyors, shall, as soon as they conveniently can, go upon said tract of land and lay the same off into lots ten poles square, and

1880
Special Term.

Petty
v.
Fogle *et al.*

number the same, and assign to one of the said parties the lots being the odd numbers, and to the other of said parties the lots being the even numbers, and make out a fair plat, which shall be recorded in the clerk's office of the county court of Wirt county; but the parties of the second part having bored a well to the depth of upwards of one hundred feet, and commenced boring another, the said surveyors shall lay off a lot, ten rods square, including or near the point where said well has been commenced, which last mentioned two lots shall not be numbered, but shall be held by the parties of the second part during the same period and for the same purpose that they shall hold the lots which shall thus be assigned them as aforesaid; but as a rent for the lot on which the said well has been partly bored as aforesaid, the said parties of the second part shall pay to the said parties of the first part out of the vat at the well, or well or wells, one-twelfth part of all the oil taken therefrom. And the said surveyors shall lay off a lot ten rods square, including the present dwelling-house of said Petty, which shall not be numbered; and the said parties of the first part shall hold said lot, with the dwelling-house and other fixtures thereon, as long as they shall desire to use the same for any purpose except its oil-privileges; and whenever the said parties of the first part shall desire to use said lot for the purpose of boring for oil, the said lot shall be the joint property during the period hereinafter named of the parties of the first and second part, each party taking one moiety, or one moiety of the proceeds thereof; the parties of the first and second part, their heirs and assigns, shall, for and during the period of nineteen years, commencing on the 8th day of March, 1861, have the exclusive privilege of boring and mining for oil on the lots of said land that shall be assigned to them respectively by this agreement, except the lot reserved to the parties of the first part on which the said dwelling-house is situated; and during the period aforesaid, the parties of the first and second part, their heirs

and assigns, shall use for their purposes any timber, stone or fuel that may be on the lots which may be assigned to them respectively; but neither party shall have the privilege of taking timber, stone or fuel from the lots assigned to the other; but the parties, during the period aforesaid, of both the first and second parts, their heirs and assigns, shall have and enjoy such full and uninterrupted privilege of roads and ways over each and all of said lots as may be necessary for their respective purposes; but neither party, their heirs or assigns, shall take timber, fuel or stone from any portion of said land for the purpose of selling the same, to be used off said tract of land. It is further agreed between the parties of the first and second part, their personal representatives and assigns shall have full power to sub-let or release in part or parcel, in whole, the lots of land allotted to them respectively; and at the end of the term aforesaid the said parties to this agreement shall have full power to remove any and all machinery and fixtures that may by them be put thereon, respectively. The parties of the first and second part shall, respectively, pay the taxes aforesaid for the county or State purposes on the lots assigned to them.

" Witness the following signatures and seals:

|  |  |
|---|---|
| "EVANS D. FOGLE, | [Seal.] |
| "JAMES R. UTT, | [Seal.] |
| "E. W. PETTY, | [Seal.] |
| "WILLIAM HAMILTON, | [Seal.] |
| "J. B. BLAIR, | [Seal.] |
| "C. H. SHATTUCK, | [Seal.] |
| "W. T. WILLIAMS, | [Seal.] |
| "JOHN BURGESS. | [Seal.]" |

Exhibit C referred to in the bill is as follows, viz:

" Statement of taxes paid by E. W. Petty, which it is claimed ought to be refunded to him by the defendants, Hamilton, Blair, Shattuck, Williams and Burgess:

| | |
|---|---|
| Levy of 1861, $\frac{1}{2}$ of $5.83.................................................... | $2 91 |
| " of 1862, $\frac{1}{2}$ of $5.84................................................ | 2 92 |
| " of 1863, $\frac{1}{2}$ of $3.65............................... .................. | 1 83 |

Levy of 1864, ½ of $12.78............................. ............. ..... ...... ......... 6 39
" of 1865, ½ of $23.09................................................. 11 54
" of 1866, tax on 103½ acres, (half the whole amount)....... 28 84
" of 1867, tax on 103½ acres, (half the whole amount)...... 48 90
" of 1868, tax on 103½ acres, (half the whole amount)....... 308 56
" of 1869, on 103½ acres, (being half the land)................ 148 64
" of 1870, on 103½ acres, (being half the land)................ 130 00
" of 1871, on 103½ acres, (being half the land)................ 158 10
" of 1872, on 103½ acres, (being half the land)................ 67 63

On the 14th day of December, 1874, the court made and entered the following decree in the cause, viz:

" The process in this cause having been duly executed on the home defendants, and the bill as to them having been taken for confessed, and the cause regularly set for hearing at the rules, and they still failing to appear, plead, answer or demur, and the order of publication as to the absent defendants having been duly executed as required by law. This cause came on this day to be heard upon the bill and exhibits filed therewith, on the papers filed in the cause, and was argued by counsel—

"On consideration whereof, the court is of opinion that the plaintiff is entitled to the relief prayed, and doth adjudge, order and decree that this cause be and the same is referred to Barna Powell, Esq., one of the commissioners of this court, with directions to take, state and report upon the account set forth in the bill of complaint in this cause, and to ascertain and report.

"*First*, What amount of taxes and levies upon that portion of the land laid off and numbered by even numbers, and allotted to the said defendants, Hamilton, Blair, Williams, Shattuck and Burgess, as in the bill mentioned, are chargeable upon said lots to the said defendants, or either of them.

"*Secondly.* What amount of taxes and levies have been paid by the said plaintiff upon the said tract of land which should be apportioned between the said defendants upon the said several allotments of land, together with the times of such payments and the dates when interest should be paid on the same.

"And lastly, any matters deemed pertinent or required

by either party; and publication of the ·time and place of taking such accounts for two weeks in a newspaper shall be equal to personal service on the parties to this cause."

At a term of the said court held on the 9th day of July, 1875, the defendant, Evans D. Fogle appeared and filed his answer by leave of the court. And the decree showing the filing of said answer proceeds as follows, viz:

"And it appearing to the court that the decree rendered in this cause at the December term, 1874, was made against J. B. Blair, one of the defendants, who had not been served with process, and that said decree as to him was therefore erroneous, it is ordered that the said decree be and the same is hereby set aside, cancelled and annulled as to the said J. B. Blair, and this cause as to him is remanded to rules to be further proceeded in as to him."

Afterwards on the 18th day of August, 1876, the court made and entered the following decree in the cause, viz:

"This day the defendant, Charles H. Shattuck, files here in court his answer to complainant's bill, to which answer the complainant replies generally; and this cause coming on this day to be further heard upon the bill and exhibits filed therewith, on the answer of the defendant, Shattuck, and general replication thereto, and the exhibits filed with said answer, on the orders formerly made in the cause, on the bill taken for confessed and set for hearing at rules as to the defendant, J. B. Blair, on the report of commissioner Barna Powell, taken in this cause, and was argued by counsel. On consideration whereof, it seems to the court, that in order to adjust the rights and equities of the parties in this cause, it will be proper to have before the court the original or certified copies of the original leases or contracts mentioned and referred to in the paper marked exhibit "A," filed with the plaintiff's bill It is therefore, ordered that complainant do file with his bill the original or certified copies of the original leases

or contracts mentioned and referred to in said exhibit "A," or if complainant is unable to produce said originals or certified copies of the same, complainant may call upon the defendant, Shattuck, to produce said originals if the same be in his possession; and upon the affidavit of said Shattuck of his inability to produce said originals, or either of them, the commissioner hereinafter mentioned, upon satisfactory proof taken before him that said original leases or contracts are not in existence and cannot be produced, may take testimony to prove the contents of said leases or contracts, which said testimony so taken shall be by him reported to the court.

"And it is further ordered, that in addition to the matters heretofore referred to said commissioner, and upon which he has reported, this cause be re-committed to said commissioner Powell, with directions to take, state and report what was the whole amount of State, county, township or district levies and taxes, where assessed or charged against the said tract of land during the time mentioned in complainant's bill, showing, in separate columns for each year, said State, county, township or district levies.

"2e. To state and report what was the amount of said taxes and levies for each year, in separate columns, on that portion of the land set apart to the defendants, Shattuck and others, parties of the second part to the agreement "A."

"3d. By whom said taxes were paid and the amount thereof.

"4th. When did the said Shattuck cease to have any interest in said land, whether he had any interest in the same at the date of the contract, exhibit "A," or has had any interest therein since; and if so, the amount thereof. Any party in interest may appear and defend his interest before said commissioner upon the reference heretofore and now here made in this cause, due notice being given thereof; said commissioner to report to a future term of this court, and in making up said report to add any mat-

ters deemed pertinent by himself, or that any party in interest may require."

The answer of defendant, Fogle, states that he is advised that his interests are not affected by the bill ; that he was one " of the parties of the first part in the contract in the bill mentioned, which is the basis of this suit, and he is advised that whether the prayer of the said bill is granted or not, it will not affect any interest of respondent; that this respondent being a nominal party to said suit ought not to be liable for any costs." And he prays to be hence dismissed, &c.

The answer of the defendant, Shattuck, among other things contains a formal demurrer to plaintiff's bill for want of equity; and under the view taken of this cause it is deemed unnecessary to state any of the other defences or matters set up in said answer.

Afterwards, on the 13th day of March, 1877, the court made and entered this decree in the cause, to wit :

" This cause came on again to be heard upon the papers read at the former hearing, upon the former orders made therein, upon the original and supplemental report of commissioner Barna Powell, made and filed in open court on the 26th day of December, 1876, on the exceptions of complainant to the deposition of defendant, Shattuck, also exceptions to said report, which were duly filed and set down for argument, and was argued by counsel. Upon consideration whereof, the court is of opinion that the bill of complainant is sufficient in law for the defendants to answer to, and that the demurrer of defendant Shattuck, filed with his said answer, should be overruled. It is therefore ordered, that the demurrer of said defendant, C. H. Shattuck, be and the same is hereby overruled.

" And it is further adjudged, ordered and decreed that the exceptions to the depositions of E. W. Petty and C. H. Shattuck, taken by the plaintiff, so far as they refer to testimony that varies or contradicts the agreement, exhibit "A," filed with the bill, are sustained, and as to the other matters, the said exceptions are overruled.

"It is further adjudged, ordered and decreed that the exceptions of complainant to the special commissioner's report, and supplemental report, be and the same are hereby overruled, and that said report be and the same is in all things confirmed. And the court having fully considered the cause, is further of opinion that the complainant is not entitled to the relief prayed for in his said bill against the defendant, C. H. Shattuck, he, complainant, by his counsel, in open court having declared that he was not seeking relief in this suit except against said Shattuck.

"It is, therefore, further adjudged ordered and decreed that the bill as against the defendant, C. H. Shattuck, be and the same is hereby dismissed, and that the defendant, C. H. Shattuck, recover his costs about his defense here expended, and that he have execution thereof."

The commissioner's said original and supplemental reports appear in the cause, and also some depositions which I deem it unnecessary to refer to further.

*John A. Hutchinson,* for appellant, relied on the following authorities:

Comyn Dig., Chancery, 2 A; 13 Ves. 278; 2 Ph. (22 E. C. R.) 758–762; *S. E. Railway* v. *Bogden,* 3 Man. & G. (49 E. C. R.); 5 Jur. N. S. 105; 14 Gratt. 214–219; 1 Johns. Ch. 425; *Id.* 409; 2 Leigh 6; 5 Leigh 83; 2 Rob. (Old) Pr. 3; 4 Johns. Ch. 337; 13 Metc. 5; 13 Mo. 171; Story Eq. Juris. § 505; 1 V. & B. 114; Freeman Co-Tenancy §§ 263, 321; 5 Johns. Ch. 407; 1 Black. 430; 1 Washb. R. P. 430; *Sanborn* v. *Braley,* 47 Vt.; 1 Story Eq. Juris. § 444; 27 Wis. 466; 31 Wis. 442; 4 Kent. Com. 371; 42 Pa. St. 401; 1 Sm. L. C. (7th Am. ed.) 1236; Taylor Landlord and Tenant §§ 436, 438; 1 Sm. L. C. 148; 7 W. Va. 289; 5 Wall. 687; 8 M. & W. 834; 13 Gratt. 716; 24 Gratt. 19; 7 Cush. 371-374; 8 M. &. W. 834; 1 Chit. Contr. (11th Am. ed.) 309, note; 4 Dwr. 29.

*Scott and Cole,* for appellees, cited the following authorities:

2 Rand. 449; 2 Leigh 6; 5 Leigh 83; 5 W. Va. 33; 1 Story Eq. Juris. §§ 458, 458 a, 459; 5 Pet. 495; *Id.* § 442; 1 Wash. Real Property 421, 430; 2 Min. Inst. 400-405, 425-431; 1 Story Eq. Juris. §§ 477, 478, 484, 493, note 1; 3 L. C. in Eq. (3d Am. ed. H. & W. notes) 131, 133, 134, 135; Taylor Landlord and Tenant § 341; 2 Rob. New. Pr. 83, 94; 2 Com. 394; Taylor Landlord and Tenant §§ 260, 262, 293, 395, 437, 443; Code ch. 30, § 15; *Id.* ch. 72, § 20; 1 Sm. L. C. 137 *et seq.; Id.* 141; 2 Lom. Dig. 254, 255, 256; 2 Min. Inst. 721; 7 Gratt. 112; *Id.* 177; 2 Par. Cont. 494-497, 500, 560, 561; 26 Beav. 285; 28 Beav. 440; 3 T. R. 470; 1 Wend. 388; 7 Ves. 453; 6 Ves. 341; 3 Ves. 450; 6 Johns. 54; 11 Gratt. 434.

HAYMOND, JUDGE, delivered the opinion of the Court:

Regarding the exhibits A and C filed with the bill as a part thereof, it seems to me that the bill fails to show sufficient matter to give a court of equity jurisdiction thereof, as to the parties of the second part to exhibit A. in the bill mentioned; and that it does show on its face that there is an adequate and complete remedy at law as to the matters of taxes sought to be recovered in this cause by the bill against said parties of the second part to said exhibit A, if any recovery can or ought in fact to be had upon said matters or any part thereof in any court against said parties of the second part to said exhibit A. It seems to me that the parties of the first part to said exhibit A, nor either of them were and are not joint tenants or tenants in common with the parties of the second part thereto, whatever may be the legal relations of the parties of the first part to each other, or of the parties of the second part to each other. This, I think, is clear from the provisions and stipulations of said exhibit A. No question, therefore, of contribution between joint tenants and tenants in common arises in this case upon the face of

the bill and exhibits between the parties of the first part or any of them, and the parties of the second part, to said exhibit A. It is true the plaintiff in his bill does allege that the defendant, Evans D. Fogle, (one of the parties of the first part), is indebted to the plaintiff on the lots assigned to the plaintiff and said Fogle and Utt, in the sum of $—; but the plaintiff files no account with his bill against said Fogle. The only account filed by the plaintiff with his bill is against the defendants, said parties of the second part, Hamilton, Blair, Shattuck, Williams and Burgess; and that account is for taxes from 1861 to 1872 inclusive, in which plaintiff charges said last named defendants with the taxes on one half of the whole tract of land of 207 acres assigned to them in the division and assignment of lots in the bill mentioned. And no effort or attempt is made in any part of the proceedings, by evidence or otherwise, to establish any claim for contribution to the plaintiff for any part of the lots assigned to the parties of the first part or either of them.

1880
Special Term.

Petty
v.
Fogle et al.

From the draft of the bill, the failure to file any account against Fogle and from all the subsequent proceedings in the cause, including the plaintiff's evidence and also including the plaintiff's declaration made in open court by his counsel, contained in the final decree, that he was not seeking relief in this suit except as against said Shattuck, it is manifest to my mind from the character of the bill, exhibits and the whole case as disclosed by the record, that said clause in the bill with reference to indebtedness of Fogle was incorporated therein with the view of giving jurisdiction to the court of equity of the matters of taxes alleged in the bill against the defendants other than the defendant Fogle. But if the plaintiff in fact had any just claim against defendant, Fogle, for contribution for taxes paid by him on these lots assigned to defendants, Fogle and Utt, it was improper to join that claim with his demand or claim against the other defendants, the parties of the second part to

Syllabus 1.

1880
Special Term.

Petty
v.
Fogle *et al.*

Syllabus 2.

said exhibit A.; for they had no interest in the matter of contribution between plaintiff and Fogle as to the taxes paid by plaintiff on the lots assigned to the defendants, Utt and Fogle, jointly, and had no interest in the litigation of that matter. In this aspect the bill was multifarious. See Story's Eq. Pl., §§ 271-286, 530, 540, 747 and notes.

I proceed now to consider some of the authorities bearing upon bills filed for an account against defendant. " It is said a bill in equity has been a convenient substitute for the action of account." This jurisdiction of equity was before the court of appeals of Virginia in the case of *Smith* v. *Marks*, 2 Rand. 449. The authorities were there examined, and the conclusion drawn that a bill for account would not lie, when there was only a single demand, and payment by way of set-off in the others; but that to authorize equity to take jurisdiction there must be *mutual demands*. See opinion of the court in the last named case delivered by Judge Carr and authorities there cited. Judge Carr in his opinion among other things, says: " For the assertion, that account is a head of equity, authority may be found in several elementary writers and books of practice; but the position is not to be taken in that large and comprehensive sense given to the word *account* in common parlance." In the case of *Smith* v. *Marks* the bill was filed by a carpenter against his employer, to recover the balance due him for building a house, the dimensions of the house, the manner in which the work was to be done, the sum to be paid and the days of payment were stated in a written contract. The Court of Appeals was clearly of opinion that this was not such matter of account as equity ought to entertain. The remedy at law was complete.

In *The Presbyterian Church* v. *Mason et al.*, 4 Rand. 197, the plaintiffs made a contract with the defendants in their character of trustees for the pewholders of the church, whereby the defendants employed them to finish

the steeple of the church ; and the plaintiffs asserted their demand under this contract by bill in equity. The Court of Appeals considered the case to be in principle like that of *Smith* v. *Marks,* and dismissed the bill. In the the opinion of the court there could have been no difficulty from the trustees' fiduciary characters, because the bill stated that the contract was made with the trustees alone, and solely on their credit and responsibility.

In *Poage* v. *Wilson,* 2 Leigh 490, the complainant alleged that the defendant put land-warrants into his hands to the amount of one hundred thousand acres, to be by him located and surveyed for and in the name of defendant ; that defendant under the contract was to pay $20.50 for every one thousand acres of land so located and surveyed ; that he located and surveyed the whole quantity, and defendant had at several times made him payments to the amount of $685.00 ; and the bill prayed an account of the transactions, and a decree for the balance due upon it. *Held:* that the claim of the complainant might have been enforced at law, if anything was due upon it, by action of *assumpsit*; and equity could take no jurisdiction. The bill was dismissed.

*Hickman* v. *Stout,* 2 Leigh 6, presented a case of a different kind. The bill stated mutual accounts between the parties, running through a series of years, and consisting of numerous items of blacksmith's work on the one hand, and, on the other hand, of various items for articles of country produce delivered, for money paid, and for the use of wagons. In this case the jurisdiction of equity was sustained. 2 Robinson's Old Prac. 3, 4, 5.

In *Sturtevant* v. *Goode,* 5 Leigh 83, the syllabus is : "S., a carpenter, having been employed to build a house for G., and the terms of the contract being expressed in two agreements between the parties, which were left in the hands of G., the employer, S. brings an action at law against G. on the agreements; and his counsel, finding it necessary, and it being in fact necessary, to have copies of the agreements in order to frame his declaration, re-

65

quires G. to furnish copies thereof; G. refuses to furnish them; whereupon S. dismisses his action at law, and files a bill in equity praying an account and a decree for the balance due for the work done. Held: the case is properly relievable in equity." Judge Tucker in delivering the opinion of the court in this case said at page eighty seven : " If Goode preferred a jury trial, he should have frankly afforded copies of the papers, which his adversary thought essential for the prosecution of his suit. As he did not, he cannot complain that he has been brought into a court of equity, since he compelled Sturtevant to come here. Nor can he under such circumstances, object to the jurisdiction. He cannot be permitted to drive his adversary from the court of law by withholding papers, and then drive him from the court of chancery, because he did not hazard a trial at law without them."

In the case of *Tyler et al* v. *Nelson's adm'x*, 14 Gratt. 214, it was held, that "A court of equity has jurisdiction in a suit by a high sheriff against his deputy and the sureties of the deputy, to have a settlement of the accounts of several administrations upon estates committed to the high sheriff, and which went into the hands of the deputy. And the suit may be maintained, though the deputy had settled the administration-accounts before the probate court; though the bill does not allege, and it is not proved, that the high sheriff had paid the balance reported to be due on the settled accounts, or any part of them." The jurisdiction of a court of equity to entertain the bill in this cause was sustained by the Court of Appeals of Virginia for obvious reasons stated in the opinion of the court, delivered by Judge Lee, at pages 219 and 220.

In *Sanborn* v. *Braley et al.*, 47 Vt. 170, it was held, that " It is the proper exercise of equity jurisdiction to apportion among parties having a common interest in the use of a water-power, and on whom rests a common duty of maintaining the dam which creates the power, the

burden and expense of such duty." See also Freeman on Co-tenancy and Partition, in which he says, at section 321, " Courts of equity have concurrent jurisdiction with courts of law of all matters of account between tenants in common, or other co-tenants. Either co-tenant may invoke the assistance of equity to compel an accounting upon showing a necessity therefor, and cannot be deprived of this assistance merely because he has an adequate legal remedy by action of account. In fact the superior facilities offered by courts of equity, when an accounting has become necessary, are such that these courts are almost universally resorted to in preference to the tribunals of the law. But it has been determined, that, when the accounts are all on one side and are very simple, and no discovery is sought, courts of equity will decline taking jurisdiction of the case." Mr. Freeman, in support of the last clause, in note two, cites *Gloninger* v. *Hazard*, 42 Pa. St. 401. In the case last named the syllabus is as follows, viz : " Courts of equity have concurrent jurisdiction with courts of law in matters of account, where the accounts are mutual and complicated, and on one side only, where discovery is sought and is material to relief; but when the accounts are all on one side, and no discovery is sought or required, the case is not one for a court of equity."

Judge Woodward, delivering the opinion of the court in the last named cause and at pages 400 and 401 says : "The next and only other observation we have to make is, that the plaintiff's have ample remedy at law, and therefore should not come into equity. If they wish to compel the defendants to acknowledge their title, and admit them to a joint possession, ejectment is their appropriate remedy. If they want to recover rents, *assumpsit* lies. *Borrell's adm'r* v. *Borrell*, 9 Casey (Pa.) 492. There is no doubt of our concurrent jurisdiction, with courts of law, in matters of acconnt where the accounts are mutual and complicated, and also where they are all on one side, but discovery is sought, and is material to

the relief. In the first class of cases a bill in equity is generally preferable to account rendered, and as discovery is peculiarly a chancery jurisdiction, a court of equity, to prevent multiplicity of suits, will, when it has legitimately acquired jurisdiction over the cause for purposes of discovery, entertain the suit for relief, and dispose of every connected topic of dispute. But, on the other hand, where the accounts are all on one side, and no discovery is sought or required, courts of equity will decline taking jurisdiction of the cause. Brightly's Eq. Pl. 124–125; *McGowin* v. *Remington*, 2 Jones (Pa.) 63; *Shollenberger's Appeal*, 9 Harr. (Pa.) 340; *Bank of United States* v. *Biddle*, 2 Parsons (Pa.) 53; Story's Eq. §§458-9, 462. The syllabus is taken from the foregoing part of Judge Woodward's opinion and it will be seen by comparing the syllabus with the opinion, that the syllabus is not entirely accurate in part.

In the case of *Northeastern Railway Co.* v. *Martin*, 22 Eng. Chy. 757 top page and 758 side page, the syllabus is: "The equitable jurisdiction in matters of account is concurrent with that of courts of law, and no precise rule can be laid down as to the cases in which it will be exercised, this Court reserving to itself a large discretion upon the subject, in the exercise of which it will pay due regard to the nature of the cases and the conduct of the parties, and will not restrain an action already commenced, merely on the ground that from the number and perplexity of the items in the account a judge at *nisi prius* would urge the parties to refer it." The Lord Chancellor in his opinion in this case says: "The jurisdiction in matters of account is not exercised, as it is in many other cases, to prevent injustice which would arise from the exercise of a purely legal right, or to enforce justice in cases in which courts of law cannot afford it; but the jurisdiction is concurrent with that of courts of law, and is adopted, because in certain cases it has better means of ascertaining the rights of parties. It is therefore impossible with precision to lay down

1880
Special Term.

Petty
v.
Fogle *et al.*

rules or establish definitions as to the case in which it may be proper for this Court to exercise this jurisdiction. The infinitely varied transactions of mankind would be found continually to baffle such rules, and to escape from such definitions. It is therefore necessary for this Court to reserve to itself a large discretion, in the exercise of which due regard must be had not only to the nature of the case, but to the conduct of the parties. In the present case both concur in satisfying me that the trial of the action at law ought not to be stayed; it is not a case of mutual accounts—the only items on the one side being certain payments by the company to the plaintiffs at law, which are not in dispute."

In the case of *Fowle et al.* v. *Lawrason*, 5 Peters 495 and 502, the Chief Justice said: "That a court of chancery has jurisdiction in matters of account cannot be questioned, nor can it be doubted that this jurisdiction is often benificially exercised; but it cannot be admitted that a court of equity may take cognizance of every action for goods, wares and merchandise sold and delivered, or for money advanced, when partial payments have been made, or every contract expressed or implied consisting of various items, on which different sums of money have become due, and different payments have been made. Although the line may not be drawn with absolute precision, yet it may be safely affirmed that a court of chancery cannot draw to itself every transaction between individuals in which an account between the parties is to be adjusted. In all cases in which an action of account would be the proper remedy at law, and in all cases where a trustee is a party, the jurisdiction of a court of equity is undoubted. It is the proper tribunal. But in transactions not of this peculiar character, greater complexity ought to exist in the accounts, or some difficulty at law should interfere, some discovery should be required, in order to induce a court of chancery to exercise jurisdiction."

In the case of *Lafever* v. *Billmyer et al.*, 5 W. Va.

33, Judge Moore delivered the opinion of the court, in which he reviewed at some length a number of authorities on the subject; and in that case it was held substantially, that " courts of equity have jurisdiction of matters of account: First. Where there are mutual demands, and *a fortiori* when complicated. Second. When the accounts are on one side and a discovery is sought that is material to the relief. Third. Equity having taken jurisdiction for discovery, will, to avoid multiplicity of suits, administer suitable relief. Courts of equity decline jurisdiction in matters of accounts: First. When the demands are all on one side, and no discovery is claimed or necessary. Second. When on one side there are demands, and on the other mere payments or sets-off, and no discovery is sought or required." These propositions, I think, are in the main correct, although they do not embrace all matters of account of which equity should, or should not, take jurisdiction. Judge Moore in his opinion in the last named case at pages 41 and 42, says: " I think, therefore, that it may be laid down as a general rule, that if a bill shows on its face that the specific account can be fairly taken in a court of common law, and the bill contains vague and general statements outside of the specific account, these statements will be considered merely as a pretext for transferring the jurisdiction from a court of law to that of equity, and in such a case a court of equity will sustain a demurrer to the bill." This proposition also I consider is generally correct.

In the case at bar if the defendants, the parties of the second part to said exhibit A, are liable therein in any form of proceeding or suit, it is for a moiety of the county and state-taxes against the whole of said tract for the years mentioned in the bill, though I very much doubt whether the parties of the second part are liable for district and township taxes under any circumstances, as courts cannot undertake to make contracts for parties; but I do not now decide the question, as it is not neces-

sary in the view I take of the case. It is true that when parties make contracts, it is the province of the courts in proper cases and in the proper jurisdiction to construe such contracts according to the established rules of interpretation, and enforce them, as far as may be ; and it strikes me that the word "or," as used in said exhibit A in the last clause thereof in connection with the words "county" and "state," was meant and intended by the parties to mean the same as if the word "and" had been used instead thereof. I only mention the matter of township and district-tax now by way of suggestion, not intending to commit myself thereto by what I have said in relation thereto. But whether the defendants, parties of the second part to said exhibit A., are liable for a moiety of the county and state-tax only, or for both and also a moity of the township and district taxes, under the last clause of said exhibit A, after deducting payments, a court of law is amply and completely competent to decide. And if it be held that the defendants are liable for one moiety of the county and state-tax only, then the account or claim therefor is not complicated, but is plain and easy of settlement and adjudication in a court of law; and so if it be held that the defendants, parties of the second part, are liable for one moiety of the township and district-taxes in addition to the county and state-taxes, after deducting payments, the account is not complicated, but is easy of settlement and adjudication in a court of law. There seems to have been according to the allegations of the bill but a single payment made on the taxes by the defendants, parties of the second part, and there is no discovery sought.

Upon the whole it seems to me, that there is a complete remedy in a court of law for the recovery of any taxes for which the defendants, said parties of the second part, are liable under said exhibit A, and that a court of equity should not take jurisdiction of plaintiff's said claim in his bill and exhibits filed therewith mentioned for taxes against defendants, said parties of the second

part, and that for this cause the plaintiff's bill as to the defendants, said parties of the second part to said exhibit A, should have been dismissed as to the said defendants, parties of the second part to said exhibit, upon the demurrer to the bill contained in the answer of defendant, Shattuck.

The cases of *Astor* v. *Miller et al.*, 2 Paige Chy. 68, and *Williams* v. *Craig*, 2 Edwards Chy. by McCowen, top page 296 and side page 297, at first glance seem to give some color to the propriety of a court of equity taking jurisdiction as to said matter of taxes against the defendants, said parties of the second part to said exhibit A; but on close examination of them it seems to me that there is a clear distinction between these cases and the case at bar, if these cases or either of them are to be followed.

For the foregoing reasons, it seems to me, there is error in the decree rendered in this cause by the circuit court of the county of Wood on the 13th day of March, 1877, and that the same must be reversed; but as the appellee, Shattuck, is the party substantially prevailing, the appellant must pay the appellee, Shattuck, his costs about his defence to the plaintiff's appeal and *supersedeas* in this court. And this court proceeding to render such decree in the cause as said circuit court should have rendered, it is adjudged, ordered and decreed that the demurrer of the defendant, C. H. Shattuck, filed to the plaintiff's bill in the forepart of his answer, be sustained, upon the ground that the said bill is multifarious, and upon the further ground, that a court of equity has not jurisdiction of the matters alleged in said bill as against the defendants, William Hamilton, J. B. Blair, C. H. Shattuck, W. T. Williams and John Burgess; and that plaintiff's bill for said causes be and is hereby dismissed. And the plaintiff, having failed to establish any just claim against the defendant, Evans D. Fogle, by reason of any matter alleged against him in the said bill, it is further adjudged, ordered and decreed, that the plaintiff's

bill be and the same is hereby dismissed as to the said Evans D. Fogle. And it is further adjudged, ordered and decreed, that the plaintiff, E. W. Petty, do pay to the said defendant, C. H. Shattuck, his costs about the defence of this suit in the circuit court of the county of Wood expended, &c.

*1880*
*Special Term.*
———
Petty
v.
Fogle *et al.*

THE OTHER JUDGES CONCURRED.

DECREE REVERSED. CAUSE DISMISSED.