# WHEELING.

## WEINRICH *v.* WOLF.

Submitted September 15, 1883—Decided May 3, 1884.

1. A paper purporting to be a deed executed under hand and seal, and stating "that the grantor has agreed to make a deed for a certain tract of land to the grantee, and that in consideration thereof, the grantee desiring the deed, the grantor makes a quit-claim deed for such land to the grantee describing the land by metes and bounds," but containing no other granting clause is no deed but simply an acknowledgment that the grantee has an equitable title to the land. (p. 314.)

2. If a tract of land is purchased by A., but before the deed is made, he admits B. as a partner in the purchase, each to pay one half of the purchase-money and expenses, but the deed to be made to A., and before this arrangement is made, A. agrees to let C. have this land on the payment of certain moneys, of all of which B. is informed before he makes his contract with A., A. thereby becomes a trustee for the use of A. and B.; and if A. and B. pay taxes and expenses on this land for some years but not equally, B. paying them to A., the trustee, in whom is the legal title to such land, and A. receives from C. from time to time various sums of money under his contract, and finally executes a deed to C. for this land, B. then has a right to sue A. in a court of equity for a settlement of his accounts as trustee; and the statute of limitations cannot be pleaded so as to bar the settlement of the entire account from the beginning. (p. 319.)

GREEN, JUDGE, furnishes the following statement of the case:

A tract of land in Ritchie county was charged on the assessor's books in 1866 in the name of Jacob Smith's estate, the taxes on it being five dollars and sixty cents. The taxes not being paid, it was on September 10, 1867, sold for these taxes with interest and commissions amounting to seven dollars; and on December 27, 1869, the recorder of Ritchie county made a deed for said tract of land to the purchaser thereof, Jacob Wolf, which was duly admitted to record on January 4, 1870. But before it was admitted to record a verbal agreement, which had been made a short time previous to the making of this deed, whereby Samuel Sinnett and Lewis Weinrich were to be regarded as joint purchasers of this land with Jacob Wolf, was reduced to writing and was as follows:

"Know all men by these presents, that a tract of land containing one thousand six hundred acres, known as the Jacob H. Smith survey, situated in Murphy township, Ritchie county and State of West Virginia, now in lawful possession of Jacob Wolf, Samuel Sinnett and Lewis Weinrich, we, parties as above, do grant unto the children or lawful heirs of Jacob H. Smith, deceased, the right of redemption of the above said tract of land or survey, provided the same land is redeemed by the lawful heirs of Jacob H. Smith, deceased, as provided by law for the redemption of such tract of land or survey. Now should the aforesaid children or heirs as above, fail to redeem the aforesaid tract, then I, Jacob Wolf, of the first part, do agree to make unto Samuel Sinnett and Lewis Weinrich, of the second part, a deed, same as the State of West Virginia made me for the two thirds part of the aforesaid one thousand six hundred acre tract—that is to say, that each of the parties of the second part is to receive one third of the one thousand six hundred acres. It is further agreed by Samuel Sinnett and Lewis Weinrich to pay their portion of the tax on said tract of land.

"Witness our hands and seals as to the above this day, January 1, 1870.

"JACOB WOLF,          [SEAL.]
"SAMUEL SINNETT,          [SEAL.]
"LEWIS WEINRICH.          [SEAL.]"

Directly after this trust-sale was made, Jacob Wolf, the purchaser, had an understanding and agreement with the widow of Jacob Smith and some of the children (all of the children being then infants, the oldest of them being eighteen years old) that this land might be redeemed whenever the heirs of Jacob Smith might choose to do so, whether the deed had been made for the land to Jacob Wolf or not. This understanding and agreement was known to Sinnett and Weinrich, when they became partners with Wolf in this purchase; and though the deed was made by the recorder to Wolf on December 27, 1869, yet the contract signed by all these parties in this purchase provided, that the heirs of Jacob H. Smith might still redeem this land, and if they failed to redeem it, it was to be the property equally of these three partners, each of them paying one third of all

the taxes and expenses of all sorts. Under the agreement made between Wolf, the partner, and the heirs of Jacob H. Smith these heirs paid to him in all five hundred and fifty dollars for the redemption of this land; and on October 19, 1876, Jacob Wolf executed to them a deed for said one thousand acres of land, reciting that they had redeemed it. About a month before this but after the receipt by Wolf of the money to redeem this land, Wolf and wife had executed to his partners, Samuel Sinnett and Lewis Weinrich, what is called a deed for their interest in this land. It says: "In consideration that the said parties of the second part (Sinnett and Weinrich) agree to pay equal expenses on said tract of land, then the party of the first part (Jacob Wolf) does make such deed as is in him invested by the court; now the parties of the second part desiring a deed, the first party makes such deed to this undivided tract of land containing one thousand six hundred acres, of which the first party makes the second parties a quit-claim deed for two thirds of this one thousand six hundred acre tract" (describing it by metes and bounds and closing as follows) "to have and to hold the interest as aforesaid to said Samuel Sinnett and Lewis Weinrich if not redeemed." This paper or deed, as it is called, was dated September 20, 1876, and was recorded on January 27, 1877, about two months after the conveyance by Jacob Wolf to the heirs of Jacob H. Smith which was not recorded. There were only some twenty-five acres of this tract, which were cleared and remained after the deed by the recorder in the possession of the three partners Wolf, Sinnett and Weinrich jointly.

Upon this state of facts Lewis Weinrich filed his bill on the first Monday in September, 1878, against his partners in their purchase and the heirs of Jacob H. Smith, including also S. M. Scott, the husband of one of these heirs. It sets out the facts above stated, omitting the first agreement between Wolf and the widow and heirs of Joseph H. Smith, that they might at any time redeem said land. The plaintiff claims, that by virtue of the deed, as he calls it, executed by Wolf and wife to plaintiff and Sinnett on September 20, 1876, he became seized and possessed in fee simple of one third part of said land. The bill further alleges, that since

the recordation of this so-called deed Wolf for the purpose of cheating and defrauding your orator conveyed this tract of land to said Smith's heirs, fraudulently ante-dating the conveyance. This was a mistake of fact as to the date of this conveyance. It was executed two months before this paper called a deed was recorded, but a month after it was executed. This mistake arose from the fact that the deed to Smith's heirs was not recorded at all. The bill charges that in point of fact these heirs of Smith never had redeemed this land, and that the pretended redemption was a *fraud* of the *darkest* character, nothing ever having been paid to Wolf for that purpose; that Wolf had no right to receive all the redemption-money from the heirs of Smith, for the reason that at the time of the said pretended redemption all of these heirs had exceeded their majority six or seven years, except two who were infants, and were the only heirs in a condition to redeem the land, and for the further reason that as he, Wolf, had parted with two thirds of his interest, he was in no condition to permit the heirs of Smith to redeem this land; that the plaintiff was entitled to one third of this redemption-money, if any was paid to Wolf, as the plaintiff had from year to year paid his third of the taxes on this land, and yet Wolf never paid him one cent of this pretended redemption-money, which he says he received. The prayer is for the alternate relief of setting aside the deed from Wolf to Smith's heirs, if found to be fraudulent, and if not, that a decree may be entered against Wolf to pay to the plaintiff his *pro rata* share of the redemption-money, and for general relief.

This bill was demurred to and the demurrer overruled October 31, 1878.

Samuel Sinnett filed his answer admitting the statements in the bill and setting up like claims with the plaintiff. Jacob Wolf filed an answer setting out the facts, as they have been stated, and says he received of Smith's heirs five hundred and fifty dollars, giving the date and amount of each payment. And having received this as the amount necessary to redeem this land he made, as he was bound to do by his contract with them, a deed for said land; and when he received the plaintiff and Sinnett as partners, they were per-

fectly cognizant of this previous agreement with the heirs of Smith and took their interest in the land subject to the right of Smith's heirs to redeem at any time. He denies that the deed to Smith's heirs was ante-dated. The answer alleges that Weinrich and Sinnett, when the contract was made, paid a small sum but have never since paid anything and are not entitled to any part of the redemption-money received by him. He files an account of the taxes and expenses which he had paid on this land. This account runs from 1865 to 1876 and amounts to three hundred and sixty-three dollars and fifty-six cents.

A special replication was improperly permitted to be filed to this answer. I will not therefore even state its contents.

The answer of the heirs of Jacob Smith states, that Wolf attended this tax-sale and bought in the land with the understanding, that the heirs of Jacob H. Smith could at any time redeem it. They of their own knowledge knew nothing of the contract between Wolf and the plaintiffs Weinrich and Sinnett. They deny all knowledge of the execution of the deed or paper of September 20, 1876. They say that on January 10, 1876, the plaintiff and his wife and the said Sinnett and his wife conveyed all their right and title in this land to one Thomas Hill, which deed was duly acknowledged and recorded on February 24, 1876, and they file with their answer an attested copy of this deed; that on the 11th day of May, 1878, Thomas Hill conveyed to them all his right, title and interest in this tract of land. This deed is filed with the answer. They charge that Weinrich and Sinnett had cut and carried off from said tract a large quantity of timber, for which they are responsible.

On May 4, 1880, the circuit court rendered the following decree :

"This cause came on this day to be heard on the bill and exhibits filed therewith, on the answer of Samuel Sinnett, with general replication thereto on the answer of Jacob Wolf, with general replication thereto, on the answer of Robert L. Smith, Mary J. Smith, Sarah C. Scott, late Sarah. C. Smith and S. M. Scott, her husband, and Jacob S. Smith, children and heirs-at-law of Jacob H. Smith, deceased, with general replication thereto, on the answer of Martha C. Smith, who

is in fact under the age of twenty-one years, by her *guardian ad litem*, Jacob Wolf, general replication thereto, on the depositions filed by the plaintiff and defendants, exhibits and broofs filed, on the exceptions taken by the defendant, Wolf, and filed in writing to the depositions of Jacob Dougherty and others, taken on behalf of the plaintiff, on the orders made in the cause, and was argued by counsel. On consideration whereof, the court is of opinion that the deed made by the said Jacob Wolf to the said heirs-at-law of Jacob H. Smith, deceased, bearing date on the 19th day of October, 1876, by which the said Wolf conveys to the said heirs-at-law all the title he obtained at the tax sale to the said tract of sixteen hundred acres of land in the bill and proceedings mentioned, is not fraudulent as to the said plaintiff and the said Samuel Sinnett, as charged in the bill of complaint in this cause, but the said deed is *bona fide* and made in accordance with the terms and provisions, reservations and conditions of the contract between the said Jacob Wolf, Lewis Weinrich and Samuel Sinnett, as clearly appears by the evidence in the cause; and it is, therefore, adjudged, ordered and decreed that the said deed of October 19, 1876, by said Jacob Wolf to the said heirs of Jacob H. Smith, deceased, be and the same is declared valid and binding for the purpose of transferring the title which the said Wolf by his tax-deed obtained to said tract of one thousand six hundred acres of land, as in the bill and proceedings mentioned, and which was provided for by and between said Weinrich, Wolf and Sinnett in and by their contract under seal bearing date January 1, 1870, and which is filed as exhibit "A" with the plaintiff's bill in this cause. And it is further adjudged, ordered and decreed that so far as the said deed made by the said Wolf to the said Weinrich and Sinnett bearing date the 20th day of September, 1876, (which was made upon the conditions and in accordance with the reservations in said contract) is contrary to and in conflict with the rights of the said heirs to redeem said land and with the deed made by said Wolf to said heirs on the said 19th day of October, 1876, in pursuance of said contract, said deed of September 20, 1876, is cancelled and annulled, and leave is given said heirs to place said deed of October

19, 1876, upon record in the clerk's office of the county court of Ritchie county. And the said plaintiff alleging that the defendant, Jacob Wolf, has received money due him and his co-defendant, Sinnett, on account of the redemption of said land by said heirs-at-law, it is ordered that this cause be and the same is referred to J. W. Dunnington, one of the commissioners of this court, with directions to take, state and report—

"1. What money the said Wolf has received on account of the redemption of said land, or on account of purchase-money at said tax sale, or on account of taxes to which said plaintiff and said Sinnett are entitled, and if any, what amount or proportion is due each of said three parties and when received.

"2. What sum or sums were paid or advanced by said plaintiff or the said Sinnett on account of the original purchase of said tract of one thousand six hundred acres of land at tax sale, or on account of taxes to said Wolf or to the sheriff or other officer of Ritchie county since the year 1867 on said land.

"3. State and report what taxes and expenses were paid by said Wolf on account of said land, with the dates thereof and the accrued interest thereon, and what balance is due to said Wolf or to said plaintiff.

"4. Ascertain and report what lands are embraced within the boundaries of the deed made by Samuel Sinnett and Lewis Weinrich to Thomas Hill, bearing date the 10th day of June, 1876, and whether and what portion of the land claimed by the heirs of said Smith is covered by said deed, and any other pertinent matter, and report to the next term of this court."

It was also proven that on January 22, 1877, Jacob Wolf and wife executed a deed to Thomas Hill conveying of a portion of this tract of land. How much of it does not appear. There was also evidence taken to show that of the five hundred and fifty dollars paid to Jacob Wolf by the heirs of Jacob H. Smith the one hundred dollars paid by Sarah C. Scott on July 7, 1876, was according to admissions made by her and her husband the amount which Wolf had handed to her to pay to him on the redemption of this land; but this is

denied by Wolf and by her husband. It was proven that the land was rented by Wolf, Weinrich and Sinnett for twenty-five dollars a year to one Daily in the spring of 1876, and he remained in possession till his deposition was taken February 21, 1879, how much longer does not appear. Much evidence was taken in reference to the amount of taxes paid by each of the parties, Wolf, Weinrich and Sinnett.

On October 1, 1880, the commissioner made the following report:

"COMMISSIONER'S OFFICE,  
"Sept. 30, 1880.

"To THE CIRCUIT COURT OF RITCHIE COUNTY:

"Pursuant to a decree of the circuit court of Ritchie county rendered at the April term, 1880, in a suit in chancery depending in the said court between Lewis Weinrich, complainant, and Jacob Wolf and others, defendants, the undersigned, one of the commissioners of the said court to whom was referred for adjustment certain matters by said decree, reports to the court that on the 24th day of July, 1880, he issued notices against the several parties in said suit requiring them to attend before him at his office on the 16th day of August, 1880, as in the notices set forth, which were returned to your commissioner duly executed; that the parties appeared before the commissioner in obedience to the said notices, and he thereupon examined the witnesses and vouchers then produced by the several parties, and after due and mature consideration of the same, your commissioner finds—

"First. That the defendant, Jacob Wolf, has received for the redemption of the land in the proceedings mentioned the sum of five hundred and fifty dollars, as shown by statement "A" hereto annexed.

"Second. That the plaintiff, Lewis Weinrich, has paid the sum of one hundred and forty-eight dollars and twenty cents, as shown by statement 'D' hereto annexed, and that the said sum of one hundred and forty-eight dollars and twenty cents, with the interest on the several items at the rates of twenty per cent. and twelve per cent., according to law, would amount to two hundred and twenty-one dollars and fifty-four cents, and that the defendant, Samuel Sinnett, paid the sum

of one hundred and twenty-seven dollars and sixty-six cents, as shown by statement 'C' hereto annexed, and that the sum of one hundred and twenty-seven dollars and sixty-six cents, with its interest on the several amounts at twenty per cent. and twelve per cent., according to law, amounts to two hundred and seventy-nine dollars and seven cents.

"Third. That the defendant, Jacob Wolf, has paid the sum of two hundred and sixty-nine dollars and sixty-eight cents, which, with its interest at the rates of twenty per cent. and twelve per cent., according to law, amounts to the sum of four hundred and three dollars and ninety-five cents.

"Fourth. That the land embraced within the boundaries of the deed made by Samuel Sinnett and Lewis Weinrich, bearing date on the 10th day of June, 1876, is a portion of and contained within the boundaries of the land claimed by the heirs of Jacob H. Smith, deceased.

"Your commissioner deeming it pertinent, reports that the proper amount to have redeemed should have been nine hundred and four dollars and fifty-six cents. (See statement 'F.' hereto annexed.) Dividing the five hundred and fifty dollars received by Wolf between the three *pro rata* would be as follows: Samuel Sinnett one hundred and sixty-nine dollars and sixty-eight cents; Lewis Weinrich, one hundred and thirty-four dollars and seventy cents; Jacob Wolf, two hundred and forty-five dollars and sixty-two cents. (See statement 'G.')

| | | |
|---|---|---|
| "Due from Jacob Wolf to Samuel Sinnett, *pro rata* share of $550.00 | $169 | 68 |
| Interest on the same at 6 per cent., 4 years, to October 19, 1880 | 40 | 72 |
| Total | $210 | 40 |
| Due from Jacob Wolf to Lewis Weinrich, *pro rata* share of $550.00 | 134 | 70 |
| Interest on the same at 6 per cent., 4 years, to October 19, 1880 | 32 | 32 |
| "Total | $167 | 02 |

"All of which your commissioner respectfully submits.

"Given under my hand as commissioner aforesaid the day and year first above written.

"J. W. DUNNINGTON, *Commissioner.*"

The statements referred to in the foregoing report are in words and figures following, to-wit:

"A."

Statement of amount received by Jacob Wolf on account of redemption:

| | |
|---|---:|
| Received January 8, 1876, of Mary J. Smith.............. | $100 00 |
| " July 7, 1876, of Sarah C. Scott..................... | 100 00 |
| " October 17, 1876, of Robert L. Smith for Jacob S. Smith................................................ | 100 00 |
| Received October 17, 1876, of Robert L. Smith for Martha C. Smith.............. ...................,....... | 100 00 |
| Received October 19, 1876, of Robert L. Smith for self | 150 00 |
| Total amount received....................................... | $550 00 |

"B."

Statement of taxes included in settlement January 7, 1870, between Wolf, Weinrich and Sinnett:

| | |
|---|---:|
| Sheriff's tax receipt, 1865........................................... | $ 31 35 |
| " receipt amount purchase tax sale............... | 7 39 |
| Recorder's receipt for taxes, 1866.............................. | 26 65 |
| Sheriff's tax receipt, 1867........................................ | 16 47 |
| Treasurer's receipt (township), 1867........................... | 15 70 |
| " " " 1868........................ | 11 45 |
| " " " 1869......................... | 14 49 |
| Sheriff's tax receipt, 1869........................................ | 11 40 |
| | 3)134 90 |
| One third paid by each............................................ | 44 96⅔ |

"C."

Statement of amount paid Samuel Sinnett:

| | |
|---|---:|
| To one third part of taxes in statement "B.".............. | $ 44 97 |
| Township treasurer's receipt, no date........................ | 15 54 |
| Paid on sheriff's receipt, 1871, no date....................... | 12 25 |
| Paid on sheriff's receipt, 1873, no date......... ............. | 14 20 |
| Paid on sheriff's receipt to Abel Sinnett, 1866........... | 35 00 |
| Paid on collector's receipt, Murphy township, 1865... | 5 70 |
| | $127 66 |

"D."

Statement of amount paid by Lewis Weinrich:

| | |
|---|---:|
| The one third part of taxes in statement "B"............ | $ 44 97 |
| Amount paid Sinnett for Wolf, 1871......................,....... | 10 51 |
| Amount paid on tax, 1874, paid April 13, 1875......... | 1 10 |
| Amount paid on tax, 1875, paid May 29, 1876..... ...... | 18 00 |
| Amount paid to Wolf May 29, 1876........... ...........:..... | 29 62 |
| Amount paid to Wolf April 30, 1876.......................... | 34 00 |
| | $148 20 |

"E."

Statement of amount paid by Jacob Wolf:

| | | |
|---|---:|---:|
| The one third part of taxes in statement "B"......... | $ 44 | 97 |
| Sheriff's tax receipt, 1870, August 7, 1875 . .............. | 21 | 08 |
| Assessor's fee bill, 1870......................................... | | 75 |
| Paid sheriff's tax receipt, 1871, no date.. ................. | 15 | 89 |
| Surveyor's fee bill, 1871........, ........................ ...... | 7 | 75 |
| Sheriff's receipt against execution, August 17, 1871... | 9 | 60 |
| Sheriff's receipt, 1872............................... ........ | 27 | 11 |
| Sheriff's receipt, 1873................................... | 16 | 90 |
| Sheriff's receipt, 1874................................... | 32 | 93 |
| Sheriff's receipt, 1875, May 18, 1876  ...................... | 36 | 40 |
| Sheriff's receipt, 1876 ................................ | 51 | 20 |
| Clerk's fee bill, 1874.. ................................ | 5 | 10 |
| | $269 | 68 |

"F."

Counting the rate 20 per cent. per annum on that prior to 1869, and on the residue at the rate of 12 per cent. per annum, would be as follows :

| | | |
|---|---:|---:|
| Amount due Sinnett............................................ | $279 | 07 |
| Amount due Weinrich......................................... | 221 | 54 |
| Amount due Wolf............... ...... ......................... | 403 | 95 |
| Making total necessary to redeem....................... | $904 | 56 |

"G."

The amount received on the redemption by Wolf, being only $550, the *pro rata* share of that amount for each would be as follows :

| | | |
|---|---:|---:|
| Samuel Sinnett...................................................... | $ 169 | 68 |
| Lewis Weinrich............................................ ........ | 134 | 70 |
| Jacob Wolf.................................................. ............ .... | 245 | 62 |
| Total......................................... ......................... | $550 | 00" |

On the same day, to-wit, the 1st day of October, 1880, the commissioner filed with his report in this cause, depositions. These depositions referred to occupy sixty-three pages of the printed record. They will be referred to in the opinion so far as it is deemed necessary to determine the disputed questions.

The following exceptions to the above report were filed by the plaintiff :

"1st. The commissioner errs in his said report in charging against said Wolf in favor of said Samuel Sinnett, as found in exhibit or table 'C,' forty-four dollars and ninety-seven cents, there being no proof of the same. This item was of

money which according to the evidence in the case, the said Sinnett owed to Wolf in a general settlement January 7, 1870, being Sinnett's *pro rata* share of the taxes and expenses up to that date.

"2d. The commissioner errs in his said report in charging against said Wolf in favor of said Lewis Weinrich, as found in table 'D,' forty-four dollars and ninety-seven cents, there being no proof of the same. This item was of money which, according to the evidence in the case, the said Weinrich owed to the said Wolf on a general settlement, January 7, 1870, being Weinrich's *pro rata* share of the taxes and expenses to that date.

"3d. The commissioner errs in allowing to said Samuel Sinnett the sum of one hundred and twenty-seven dollars and sixty-six cents. It should be eighty-two dollars and sixty-nine cents, if anything is proper to be allowed.

"4th. The commissioner errs in allowing to said Lewis Weinrich the sum of one hundred and forty-eight dollars and twenty cents. It should be one hundred and three dollars and twenty-three cents, if anything is proper to be allowed.

"5th. The commissioner errs in not crediting said Wolf with the sum of eighty-nine dollars and ninety-four cents, being two thirds of the said one hundred and thirty-four dollars and ninety-one cents, which Wolf paid prior to January 7, 1870.

"6th. The commissioner errs in charging interest against Wolf on the five hundred and fifty dollars which he received of and from the Smith heirs for the redemption of the land at the rate of twenty per cent. and twelve per cent. Even if properly liable for interest beyond six per cent., the redemption was made under the Code which took effect April 1, 1869, and thus the heirs, if they paid any damages or interest, it was not to be computed at any other rate than that provided in the Code, 1869, which was — per cent. *But Wolf is not chargeable with interest on the taxes on which the said Weinrich and Sinnett paid on the land at the rate of twenty per cent. or twelve per cent., because he did not redeem* the land; he *suffered* the children of Smith to redeem it according to the very contract which this court in its last decree sustained as valid and binding on the parties thereto. In no event is

Wolf chargeable with interest or damages at the rate *of* twenty per cent. or twelve per cent., or any other rate than the legal rate from the time he received the money on the redemption of the land.

"7th. Wolf in receiving the money from the Smith heirs on redemption by them of the land, acted as one of the *tenants in common* in *whom the legal title* at the tax-sale has invested by the deed made to him by the recorder in 1867, and in strict accordance with the said contract by which the heirs of Smith were permitted to redeem the land. And being such *tenant in common*, and there being no evidence of any *demand* of said Wolf by either Weinrich or Sinnett, his cotenants, for payment of their parts thereof, *they are not entitled* to interest on their proportions of the five hundred and fifty dollars redemption money except from the date of the within suit. Thereupon the commissioner errs in charging Wolf with interest at any rate prior to the commencement of this suit.

"8th. The commissioner errs in charging Wolf with interest at twenty per cent. and twelve per cent. on the sums received from the heirs of Smith, who redeemed the land, because Wolf *did not* redeem the land; the law taxing only the owner or person who redeems with the extraordinary rate of interest as a penalty for not paying his taxes. If Wolf did not collect this from the heirs of Smith, he is not bound to account for that rate to the plaintiff and Sinnett.

"9th. The commisssoner should have stated the account against the three parties as partners or tenants in common, and not have allowed any interest on either part of the five hundred and fifty dollars except from the date of the writ in this cause.

"For these and other manifold errors, this defendant excepts to said report, and prays that the same may be allowed. ᐧ "And this defendant, Jacob Wolf, by way of additional exception to said report, excepts and insists upon the same— that all the items mentioned and set forth in ᐧ table 'B' of said report, are barred by the statute of limitation of five years for each and every item thereof, and defendant Wolf relies on and pleads said statute.

"Defendant Wolf excepts to said account set forth in

table 'C' of said report as to the forty-four dollars and ninety-seven cents, and as to Abel Sinnett, thirty-five dollars (1866) to collector's receipt, Murphy township, 1865, five dollars and seventy cents, to be paid 'on sheriff's receipt, 1871, twelve dollars and twenty-five cents,' and to same paid on sheriff's receipt in 1873, fourteen dollars and twenty cents, and the item of fifteen dollars and fifty-four cents the said items, and each of them, having been and being barred by the said statute of limitations.

"And the said defendant, Wolf, excepts to the items in table 'D,' forty-four dollars and ninety-seven cents, amount paid Sinnett for Wolf, 1871, ten dollars and fifty-one cents, tax of 1874, one dollar and ten cents, as barred by the said statute of limitations on which he relies; and to each and any of the said items so specified he pleads and insists on the said statute of limitations, and shows by the writ of summons in this cause that the cause of action thereon was barred before this suit was instituted."

On June 24, 1881, the court rendered the following final decree:

"This cause came on this day to be further heard upon the papers read at a former hearing of this cause, and the report of J. W. Dunnington, commissioner, to whom this cause was referred by a former decree of this court, together with all the orders heretofore made in this cause, and upon the exceptions filed to said commissioner's report by counsel for the defendant, Jacob Wolf, which was set down for argument. On consideration whereof, the court is of opinion that said exceptions are not well taken. It is therefore adjudged, ordered and decreed that the said exceptions be and the same are hereby overruled, and the said report of said commissioner, J. W. Dunnington, is approved and confirmed by the court, and the court is further of the opinion that the plaintiff is entitled to the relief prayed for in the bill. It is therefore adjudged, ordered and decreed that the plaintiff recover of the defendant, Jacob Wolf, the sum of one hundred and sixty-seven dollars and two cents, with interest thereon from the 19th day of October, A. D. 1880, as ascertained by the report of said commissioner to be due the plaintiff. And it is further adjudged, ordered and decreed

that Samuel Sinnett, one of the defendants in this cause, recover of the defendant, Jacob Wolf, two hundred and ten dollars and forty cents with interest thereon from the 19th day of October, A. D. 1880, as likewise ascertained to be due from said Wolf to said Sinnett by said commissioner in his said report. And it is further adjudged, ordered and decreed that the said plaintiff and the said Sinnett have leave to sue out executions, respectively against the said Jacob Wolf for the respective amounts ascertained by this court from said commissioner's report to be due them from said Wolf. And it is further adjudged, ordered and decreed that the plaintiff recover from the defendant, Jacob Wolf, his (the plaintiff's) costs about the prosecution of this, his suit, by him in this behalf expended, and leave is given the plaintiff to sue out execution against the said Wolf for said costs."

To this decree and to that of October 31, 1878, the defendant, Jacob Wolf, has obtained an appeal and *supersedeas.*

*John A. Hutchinson* for appellant.

*R. F. Blair* for appellee.

GREEN, JUDGE:

The first error assigned by the appellant is that the circuit court erroneously overruled in its decree of October 31, 1878, the demurrer to the bill filed by the defendant, Jacob Wolf. The whole argument of the appellant's counsel is based on the assumption, that Jacob Wolf and wife by their deed to the plaintiffs, Lewis Weinrich and Samuel Sinnett, had conveyed without warranty two undivided third parts of this tract of land of one thousand six hundred acres in controversy, which deed was duly recorded; and that subsequently thereto the said Wolf conveyed this tract of land to the heirs of Jacob H. Smith by a deed not recorded, for the purpose of cheating and defrauding the said Weinrich and Sinnett of the two thirds of said tract of land previously conveyed to them. It is argued that such subsequent deed is a mere nullity and can not throw a cloud even on the title of the plaintiff and Samuel Sinnett to said two undivided third parts of this tract of land which, as shown by the bill, had

previously been conveyed to them by a deed duly recorded. Various authorities are cited to sustain the position: It is unnecessary to consider these authorities; for the plaintiff has entirely misapprehended the case made by the bill. The case really made by the allegations in the bill is that the plaintiff and Sinnett having and claiming nothing but an equitable title to two thirds of this land, the defendant, Jacob Wolf, to cheat and defraud the plaintiff and the defendant, Samuel Sinnett, out of the two undivided third parts of said one thousand six hundred acres of land, having the legal title to the whole of it, for a pretended consideration conveyed the legal title thereto as well as the land itself to the heirs of Jacob H. Smith. If this be the real allegation of the bill, it cannot for a moment be questioned, that a court of equity ought to entertain jurisdiction of the case, and, if the case be proven as stated, the court ought to set aside this deed to the heirs of Jacob H. Smith and require Wolf, who held the legal title to the whole of this tract, to convey two undivided third parts thereof to the plaintiff and Samuel Sinnett.

It is only necessary to glance at the deed, as it is called, of Jacob Wolf and wife to Weinrich and Sinnett to see at once that it is no deed conveying to them the legal title to this land. It is a paper reciting in effect that Weinrich and Sinnett had agreed to pay equal expenses on this tract of land with Wolf; that Wolf agreed to make them a deed for their portion of the land; and Weinrich and Sinnett desiring such deed to be made the said Wolf "makes such deed to the undivided tract of land containing one thousand six hundred acres, of which Jacob Wolf makes said Weinrich and Sinnett a quit-claim deed for two thirds of this one thousand six hundred acres of land" (describing it.) And then this so called deed closes: "To have and to hold the interest as aforesaid to the said Samuel Sinnett and Lewis Weinrich if not redeemed. As witness our hands and seals." The hands and seals of Jacob Wolf and wife are appended. It is obvious that no one can convey a tract of land by simply declaring under his hand and seal that he makes a deed to the tract of land. The most that can be made of such a paper is that it is an acknowledgment, that the parties, to whom it is thus declared that a deed had been made, have an equitable title

to this tract of land; and if it was subsequently fraudulently conveyed by a deed to a third party, of course the equitable owner can have this fraudulent deed set aside. For such equitable owner has a right to call on a court of equity to compel the party holding the legal title to convey it to him, which can not be done till the fraudulent deed, which he has made of such land to the third party, has been set aside and annulled. It is true that the bill does call this paper of September 20, 1876, a conveyance by Wolf and wife to the plaintiff, Lewis Weinrich, and Samuel Sinnett; but his so calling it does not make it a deed. He files an attested copy of this paper with his bill as a part thereof; and when we look at it, we find that he misnamed it when he called it a deed. It is true it is called a deed throughout the record and in the arguments of counsel on both sides; but this does not change its nature. It is obviously no deed; and because it is no deed, it is obvious, that, if the facts stated in the bill are true, the plaintiff had a right to have the deed conveying this tract of land to the heirs of Jacob H. Smith set aside and to call for a conveyance of two thirds of this tract to the plaintiff and Samuel Sinnett. Therefore the circuit court clearly did not err in overruling the demurrer to this bill.

The circuit court did not err in its next decree of May 4, 1880, in which it held "that the deed made by Jacob Wolf to the heirs-at-law of Jacob H. Smith on October 19, 1876, by which said Wolf conveys to the said heirs-at-law all the title he obtained at the tax-sale to the said tract of sixteen hundred acres of land in the bill and proceedings mentioned, is not fraudulent as to the said plaintiff and the said Samuel Sinnett as charged in the bill of complaint in this cause, but the said deed is *bona fide* and made in accordance with the terms and provisions, reservations and conditions of the contract between Jacob Wolf, Lewis Weinrich and Samuel Sinnett as already appears by the evidence in this cause, and therefore it is adjudged, ordered and decreed that the said deed of October 18, 1876, by said Jacob Wolf to the said heirs of Jacob H. Smith, deceased, be and the same is declared valid and binding for the purpose of transferring the title which the said Wolf by his tax-deed obtained to said one thousand six hundred acres of land as in the bill and

proceedings mentioned, which was provided for, by and between said Weinrich, Wolf and Sinnett in their said contract under seal dated July 5, 1870, and which is filed with the plaintiff's bill in this cause. And it is further adjudged, ordered and decreed that so far as the said deed made by said Wolf to said Weinrich and Sinnett bearing date the 20th day of September, 1876, (which was made upon the conditions and reservations in said contract) is contrary to and in conflict with the right of the said heirs to redeem said land and in the deed made by said Wolf to said heirs on the said 19th day of October, 1876, in pursuance of said contract, said deed of September 20, 1876, is cancelled and annulled and leave is given said heirs to place said deed of October 18, 1876, upon record in the clerk's office of the county court of Ritchie county."

The language of the contract is that all of said parties "do grant unto the children or lawful heirs of Jacob H. Smith the right of redemption of this tract of land provided the same land is redeemed by the lawful heirs of Jacob H. Smith, deceased, as provided by law for the redemption of such tract." Now it would seem from the writing of this contract that some rights of redemption were understood by all the parties to belong to the heirs of Jacob H. Smith beyond what was conferred on them by the law; for this right of redemption, whatever it was, is called expressly a grant or favor to these heirs, and of course it could not be so called, if it was only the right, which the law conferred on them. And as the parol proof shows, that according to the contract made by Jacob Wolf with these heirs they were to be allowed an indefinite time, in which to redeem the land, and that it was expressly understood between Jacob Wolf and them, that whenever they chose, they could redeem the land, and as it is further proven that the other parties to this contract, Sinnett and Weinrich, were, when they made it, informed of this agreement with the heirs of Jacob H. Smith, which had been made by Wolf, there can be no doubt, that this was the understanding of all parties and the true meaning of this contract of January 1, 1870. This was obviously the meaning of what is called the deed of September 20, 1876, by Jacob Wolf and wife to the plaintiff, Wein-

rich, and Sinnett, in which Wolf declared he made to them a deed for two undivided third parts of this tract of land, if it was not redeemed. This so-called deed thus admitted impliedly, that the right of the heirs of Jacob H. Smith still existed; and was, we think, clearly understood by all parties that it would continue to exist indefinitely.

But though the first part of this contract of January 1, 1870, is worded as a contract with the heirs of Jacob H. Smith, yet the parol evidence shows that it was not, and that they never knew of the existence of such contract, till after the deed for this tract of land as redeemed was made to them by Wolf, October 19, 1876, though they are presumed to have had notice of some contract on this subject between these parties after January 29, 1877, as this so-called deed of September 20, 1876, was then recorded, and it shows some agreement to have existed but does not disclose its character. It is clear therefore, as the circuit court held, that the plaintiff, Weinrich, and also Sinnett had notice of the previous equity of the heirs of Smith to redeem this land at any time, and that they made their contract with Wolf subject to this equitable right. But even had it been otherwise, in this case it would make no difference, as the heirs of Jacob H. Smith got from Jacob Wolf a conveyance of this one thousand six hundred acres of land on October 19, 1876, in ignorance of any claim to an equitable title to this land in the plaintiff, Weinrich, and in Sinnett. If they were right in saying that their contract gave them an equitable title to this tract of land and even if they had no notice of the previous equitable rights of the heirs of Smith, or if these heirs had no previous equity, still the deed to them would not be set aside, because it was on their part a *bona fide* deed made to them for a valuable consideration without any notice that the plaintiff, Weinrich, or Sinnett claimed any equitable interest in the land conveyed. The evidence, which we have stated, shows also other reasons, why Weinrich, the plaintiff, could not in equity ask that this deed to the heirs of Jacob H. Smith should be set aside. But it is deemed unnecessary to point them out, as it is clear that the court did not err in refusing to set aside this deed.

The circuit court did not err in its decree of May 4, 1880,

in referring the cause to the commissioner to settle the accounts between Weinrich, and Sinnett and Wolf. More than sixty pages of the printed record consist of depositions taken before this decree was rendered, and a considerable portion of them referred to the many items which made up these accounts, and according to well settled principles of courts of equity, if the court had proper jurisdiction of the matters in controversy between the parties, as it had in this case, it was its duty to settle up the whole controversy between the parties; and having taken charge of it the circuit court would have erred, if it had stopped short of doing full justice between the parties and had sent them to a court of law to settle this portion of the controversy between them, even though an action of *assumpsit* might have been brought by Weinrich and Sinnett against Wolf to recover any balance due them on account of the transactions, which arose out of and were necessarily connected with the contracts and other matters which were necessarily involved in their chancery cause. But independent of that, even if there had not been involved in this suit the question, whether the heirs of Smith had really redeemed this land or had without redeeming it fraudulently procured from Wolf the deed of October 19, 1876, and the bill had been confined to a demand for settlement by Wolf with Weinrich and Sinnett of his accounts arising out of the fact that he had received the whole of the redemption-money for said tract of land and that he had paid taxes and other expenses, a court of equity would have had jurisdiction to settle such accounts. Wolf held the legal title to this tract in trust equally for himself, Weinrich and Sinnett subject to the right of the heirs of Smith at any time they chose to redeem it. The redemption-money was to be received by Wolf, and he received it from different heirs of Smith and at different times. In the meantime Wolf, the trustee, holding the legal title to the land was charged with the taxes and paid them; and as such trustee he paid expenses of different kinds connected with his trust. Upon the well known principles of courts of equity the settlement of the trust-accounts of this trustee with his *cestuis que trust* could properly be made in a court of equity.

The appellant's counsel take the position, that any respon-

sibility of Wolf to Weinrich and Sinnett incurred by his contract with them was waived by what he calls the deed made by him to them dated September 20, 1876, for the reason that the deed was accepted by them in full satisfaction and without any warranty of title.   But these views are taken under a total misapprehension of the character of this so-called deed of September 20, 1876.   It was, we have seen, no deed and conveyed nothing whatever.   It was in law a simple acknowledgment of the equitable rights of Weinrich and Sinnett, and it in no way changed or enlarged those equitable rights, which they had under their contract under seal with Wolf before that time; and of course being an instrument of no superior dignity to the contract under seal of January 1, 1870, it did not merge or destroy it, and that it was not so intended is shown by the fact that it states at its close that it was subject to the redemption of this land, evidently referring to the redemption provided for in the contract under seal of January 1, 1870.   It did not therefore in any way relieve the plaintiff from his liability to account arising from this contract of January 1, 1870.

The following cases are referred to by the appellant's counsel to show, that, if their was any liability on the part of the appellant, Wolf, to the plaintiff by reason of his not having accounted for this redemption-money or settled in any manner with the plaintiff, a court of equity has no jurisdiction:  *Sarbess, Adm'r,* v. *McClintic et al.,* 10 W. Va. 236; *Petty* v. *Fogle,* 16 W. Va. 497;  *Lefevere* v. *Billmire,* 5 W. Va. 33;  *Starks* v. *Sikes,* 8 Gray 609.

The first of these cases was a case of personal property, which was left in pledge and converted by the pledgee to his own use.   The purpose for which it was pledged having ceased to exist, this Court held that a simple action of trust for the improper conversion of this personal property was a full and complete remedy for the wrong, and the pledgeor could not in such a case bring a suit in equity to make the pledgee pay the value of this personal property.   This decision was clearly right; but it has no resemblance to the case before us.

The case in 16 W. Va., p. 497, was a case, where a suit was brought based on a written contract, which could give

the plaintiff no right to bring a suit in equity, unless the fact, that there is an account to be settled, is sufficient to authorize a suit in equity. This was regarded as unsound law by this Court, and there being in the case no ground for a suit of equity except the simple fact, that an account between the parties very simple in its nature was involved, this Court properly held that a suit in equity would not lie.

The case in 5 W. Va. 33, was a bill brought by a sheriff against his deputy charging a deficiency in the settlement of his accounts; and a demurrer to the bill was sustained. There is no resemblance between that case and the one before us. But the principles laid down in the syllabus in that case were stated in point three of the syllabus in the case in 16 W. Va. as in the general correct. Still this did not embrace all cases as to matters of account, in which equity should or should not take jurisdiction.

The case in 8 Gray 609 was simply that a co-tenant has a right to recover in an action of *assumpsit* his portion of money received from an insurance company for property on their common lease which was burned. There was no sort of an account to be settled between the plaintiff and defendant; and the case throws no light on the case before us.

The cases seem to me to throw but little light on the subject. It seems to me the real ground for the jurisdiction of a court of equity is that in this case Wolf held to the plaintiff and Sinnett the relation of *trustee*. It was a case, where by agreement the conveyance was made to one and the consideration was to be paid by them. In such case the one, who has the legal title, stands as trustee for the others, and because of his occupying this relation, if by agreement he controls or disposes of the property, can be held to an account by the others or either of them in a court of equity and may there be compelled to settle his account arising solely out of his position as such trustee. This trust, of which Jacob Wolf was trustee, is what is known as an express active trust. In such cases the *cestuis que trust* have a right in a court of equity to hold their trustee to a settlement of all his transactions; and I see no reason why the express active trust created in this case should be an exception to the general rule.

It only remains to enquire whether the settlement made by the commissioner and approved by the court was correct. The only exceptions filed to the commissioner's report were filed by the defendant, Wolf. The first five of these exceptions are based on the ground that the evidence did not show that the same parties, Wolf, Weinrich and Sinnett had. a settlement on January 7, 1870, and that these parties after including all that each of them had paid prior to January 7, 1870, with the payment by one of them to the others were made exactly square with each other to that date, so that, as the expenses, taxes, &c., on this land up to that time amounted to one hundred and thirty-four dollars and ninety cents, each of these parties with the payments made, when this settlement was made, had paid forty-four dollars and ninety-seven cents, and being then square each was thereafter to pay one third of all further taxes and expenses. If we look only to the evidence of these parties as given, this assumption of the commissioner would seem to be clearly right, the depositions of Weinrich and Sinnett cannot be understood otherwise than as asserting this to be the fact. But the written evidence of this settlement produced by Wolf, like most of the papers produced in this cause, is very badly expressed. It is as follows:

"STATE OF WEST VIRGINIA,
        "RITCHIE COUNTY, TOWNSHIP OF MURPHY,
                                "January 7, 1880.

"We, Jacob Wolf, Lewis Weinrich and Samuel Sinnett, *has* made a *generale* settlement of all county and State tax on the Smith estate from the year 1866 to 1869 and the school receipts for the years 1867, 1868 and 1869 which settlement amounts to forty-five dollars and five cents each up to January 7, 1870."

This is signed by Sinnett and Wolf first and then by Weinrich, with whom it was left, and by whom it was produced. Sinnett says it was left with him, because he and Wolf had receipts for what they had paid given when paid, and as Lewis Weinrich had paid nothing, and that day paid his share to the other two, so that with what had been paid by them, deducting what they then received, the payment of each of them was made the same as that which Lewis Wein-

rich then paid, that is, as he says, forty-five dollars and five cents, which was one third of all expenses and taxes to that time. Weinrich's evidence amounts to the same statement. This would make all expenses and taxes prior thereto one hundred and thirty-five dollars and fifteen cents, which is but twenty-five cents more than the commissioner by adding up the separate items makes it in his statement "B," that is, one hundred and thirty-four dollars and ninety cents. The one third of that, forty-four dollars and ninety-seven cents, he credits to each of these parties as of January 7, 1870. Because of the wording of this settlement made January 7, 1870, the counsel for the appellant contends, that it only shows that there was due to Wolf from each of his partners the sum of forty-five dollars and five cents, and does not show, that matters were squared beween them then, and that as Wolf had paid prior to that time this one hundred and thirty-four dollars and ninety cents, the others should each be charged with one third that amount. (See his exception 5.) But it is entirely apparent that this is not the truth of the case, even if we were to look at the testimony of Wolf alone. It is true at one time he says that they each of them paid on January 7, 1870, to him their portion of forty-five dollars and five cents, that is, fifteen dollars each and he signed this paper produced by Weinrich. This gives a different meaning to this paper from what is now insisted on by his counsel. But it obviously will not bear this meaning. At another time Wolf states, that Sinnett prior to January 7, 1870, paid these tax-receipts of James T. Hurdman, township treasurer on this land; and he says: "These receipts were lifted by Samuel Sinnett and settled between Wolf, Weinrich and Sinnett, as shown by the paper produced by Weinrich, by each paying his share of them." This seems to show that this settlement was of the character stated by Weinrich and Sinnett in their depositions, and that each with the payments previously made then paid his share of all taxes and expenses up to January 7, 1870, and that as Weinrich had paid nothing before, he paid the whole of his share, about forty-five dollars, to the other two so as to make the amount in all to that time paid by each equal to that paid by each of the others. This is confirmed by the fact, that Wolf himself

says he took in shortly before January 7, 1870, Weinrich and Sinnett as partners, as he could not pay all the taxes and expenses and wanted help, who would naturally expect him to require them to pay in cash their portions of the previous expenses.    This, I think, the evidence shows; and this was what was intended to be said on this paper signed by them and left with Weinrich.    It was left with him, because he paid his whole forty-five dollars on that day and had no other receipt for it, while each of the others had receipts for what he had previously paid.    The commissioner was right in giving each of these parties, Wolf, Weinrich and Sinnett, credits by this forty-seven dollars and ninety-seven cents, one third of their taxes and expenses prior to January 7, 1870. The court therefore was right in overruling the first five exceptions, each of which was based on a supposed error of the commissioner in this respect.

To understand the sixth exception to the commissioner's report we must clearly comprehend the principles, on which the report is based.    In the first place the law, when this sale was made, required the land-owner, when he redeemed the land, to pay at the rate of twenty *per cent. per annum* on the moneys which had been paid out by the purchaser at the tax-sale.    This remained the law, till the Code of 1868 was passed; and when it took effect, April 1, 1869, the rate was reduced to twelve *per cent. per annum*.    If this redemption of the land had been made by Smith's heirs at this rate, they ought to have paid to Wolf instead of five hundred and fifty dollars the sum of nine hundred and four dollars and fifty-six cents.    (See statement of commissioner's report.)    And if each of these parties, Sinnett, Weinrich and Wolf, had received his portion of this nine hundred and four dollars and fifty-six cents by each of them receiving this rate on the moneys he had paid, Sinnett would have received two hundred and seventy-nine dollars and seven cents, Weinrich two hundred and twenty-one dollars and fifty-four cents and Wolf four hundred and three dollars and ninety-five cents. It might perhaps have been well insisted, that Wolf ought not to have made a deed for this land, till he had received from Smith's heirs nine hundred and four dollars and fifty-six cents, and that Weinrich and Sinnett had a right to charge

him as if he had received that amount, so that each of these three parties should receive twenty *per cent. per annum* on the moneys he advanced prior to April 1, 1869, and twelve *per cent. per annum* on the amounts he advanced after that time. If this had been done, Wolf would have owed Weinrich two hundred and twenty-one dollars and fifty-four cents and Sinnett two hundred and twenty-one dollars and fifty-four cents. But the commissioner did not so charge him but he charged him only with that proportion of this sum, which nine hundred and four dollars and fifty-six cents, the sum he ought to have received, bears to five hundred and fifty dollars—the sum he actually received, that is, he charged him with only about eleven-eighteenths of this sum, which they ought respectively to have got, had they received on the moneys they advanced the rate allowed to purchasers of land at tax-sales, when the land is redeemed by the owner of the land, thus reducing the amount Wolf had to pay Sinnett to one hundred and nine dollars and sixty-eight cents and what he had to pay Weinrich to one hundred and thirty-four dollars and seventy cents (see table G.) As neither Weinrich nor Sinnett excepted to the commissioner's report, they could not, if they desired, object in this Court to the principles on which the commissioner acted; and they have not attempted so to do. They were content to receive the sums reported in their favor by the commissioner; and they cannot now, if they would, object to the amount as too small. As Wolf is the only person, who excepted to the principle, upon which this five hundred and fifty dollars, which he had received for the redemption of this land, was divided among the parties, it is incumbent on him to show not only that the principle, on which this division was made, was erroneous but also that he was prejudiced by the commissioner adopting this principle. Now the proper mode, it seems to me, of dividing this sum of five hundred and fifty dollars received by Wolf among Weinrich, Sinnett and Wolf according to their agreement was as follows: . Wolf should have been charged with the five hundred and fifty dollars of redemption-money, which he received, with interest at six *per cent.* on each part thereof from the day when he received it till October 19, 1880, when it was to be distributed; and then it

should have been ascertained how much of taxes and other expenses had been paid by Wolf, Weinrich and Sinnett respectively, which the commissioner has done, with interest on their payments severally at the rate of six *per cent. per annum* till the day of distribution; and as each of them was to pay one third of the taxes and expenses and Wolf had paid more than his third and each of the others less, each of them was on this account indebted to Wolf, and the amount of this indebtedness of each of them severally to Wolf on these accounts should have been calculated as of the day of distribution, October 19, 1880; and from the one third of the redemption-money as of that date, which Wolf owed to each of these parties, should have been subtracted the amount each of these parties severally owed him on account of the settlement of the tax and expense account; and the true amount due to Weinrich and Sinnett by Wolf on October 19, 1880, would thus have been ascertained.

If these calculations were made, it would be found that the aggregate amount, which Wolf would have to pay to Weinrich and Sinnett, would exceed by a small amount, what he would have to pay according to the calculation as made by the commissioner. The principle difference would be not in the aggregate, which Wolf would have to pay, but in the proportion, in which it would be paid to Sinnett and Weinrich. These results are ascertained by making these calculations roughly, and they might have been anticipated without the making of the calculation at all. For if the commissioner allowed to each one of these parties interest exceeding six per cent. and charged each of them with interest to the like extent exceeding six per cent, the result, we might expect, would benefit Wolf, who was charged this large interest on the amount of taxes paid by Weinrich and Sinnett aggregating two hundred and seventy-five dollars and eighty-six cents, and was allowed this large interest on the amount of taxes and expenses amounting to two hundred and sixty-nine dollars and sixty-eight cents, the difference in the two amounts being only six dollars and eighteen cents against Wolf and this was more than made up by Wolf getting the large rate, twenty *per cent. per annum*, or a larger amount than the others got this large rate upon. But the result, so far

as Wolf was concerned, was nearly the same but slightly in his favor by the commissioner's mode of settling compared with the correct mode of settling as I have stated it above.

In the first part of the sixth exception Wolf objects to his being charged interest at the rate of twenty *per cent. per annum* on the purchase-money of five hundred and fifty dollars; and this complaint is repeated in the eighth exception. There is no ground for this first portion of the sixth exception and this eighth exception; for Wolf is only charged *six per cent.* on this five hundred and fifty dollars from October 19, 1876, when he received the last of it. He ought to have been charged *six per cent.* from the time he received each part of it, which would have increased the amount he would have been charged with. The second part of the sixth exception based on the commissioner's allowing this twenty and twelve per cent. on the taxes paid is, as we have seen, wrong but not prejudicial to Wolf but rather beneficial to him, as he was allowed the same rates on taxes paid, and he paid more than either of the others. The others do not complain of this in this Court; nor could they do so, as they did not except to the report.

The seventh and ninth exceptions were also properly overruled; for Wolf, as we have seen, occupied the position of trustee to Weinrich and Sinnett and was bound to account without any demand being made upon him.

The commissioner's report having in it no errors prejudicial to Wolf, and he being the only party, who filed any exceptions to it, the court properly overruled his exceptions and confirmed the report; and the decree of June 24, 1881, based upon this report must be affirmed; and the appellees must recover of the appellant their costs in this Court expended and damages according to law.

AFFIRMED.