Wheeling.

DANIEL LAFEVER *vs.* JOHN T. BILLMYER *et al.*

July Term, 1871.

| 5 | 33· |
|---|---|
| 38 | 271. |
| 5 | 33 |
| 39 | 130 |
| 5 | 33 |
| e 51 | 217 |
| 51 | 219 |
| 5 | 33 |
| d64 | 514 |

1. Courts of Equity have jurisdiction of matters of account. 1st, Where there are mutual demands, and *a fortiori*, when complicated. 2d, Where the accounts are on one side and a discovery is sought that is material to the relief. 3d, Equity having taken jurisdiction for discovery, will, to avoid multiplicity of suits, administer suitable relief.

2. Courts of equity decline jurisdiction in matters of account, 1st, Where the demands are all on one side, and no discovery is claimed or necessary. 2d, Where on one side there are demands, and on the other mere payments or set-offs, and no discovery is sought or required.

3. If a bill for an account in respect of particular items, fails to sustain the demand upon these particular items, the court will not permit a general vague charge that the accounts are voluminous and intricate, which is inserted mainly as a pretext for the purpose of bringing the case within the jurisdiction of a court of equity, to protect the bill against a demurrer for want of equity.

4. A case in which a demurrer to a bill brought by a sheriff against his deputy, charging default in settlement of his accounts, was properly sustained, under the principles above enunciated.

This was a bill in equity, filed in the circuit court of Berkeley county, at June rules, 1869. The decree sustaining the demurrer and dismissing the bill was rendered at the October term, 1869.

The opinion of Judge Moore contains an ample statement of the matters in controversy.

The plaintiff appealed to this court.

*C. J. Faulkner* for the appellant.
*Andrew Hunter* and *Van Swearingen* for the appellees.

MOORE, J. This case has entered this court on appeal, from the judgment of the circuit court of Berkeley county, sustaining the demurrer to the bill and amended bill, and

dismissing the said bills with costs. So far as my research has extended in the investigation of the question, I must admit it is a case novel in the courts. The plaintiff filed his bill in said circuit court, alleging that he had been elected and qualified as sheriff of said county for the term of office commencing January 1st, 1859, and ending January 1st, 1861; that early in 1859 he appointed the defendant, John T. Billmyer, a deputy to act for him in the discharge of the duties of said office; that said Billmyer, with a view to the proper indemnity of plaintiff executed on the 14th February, 1859, a bond, in the penalty of thirty thousand dollars, made payable to plaintiff, with Solomon Billmyer, Martin Billmyer, Adrian W. Jones, M. S. Billmyer and David F. Billmyer as his securities; conditioned that said John T. Billmyer, during the term he was to act as such deputy, should make true and faithful collections and account for all taxes imposed by law, and payable within the district to which he was assigned; to collect county levies and parish assessments, and account for and pay the same in such manner as the law directs; to collect and account for all fines, forfeitures, and amercements accruing to the Commonwealth in said county; to receive all officers' fees in the district for collection, and to account for and pay the same to the persons to whom they were payable; to collect and account for all executions that might be placed in his hands for collection, and to perform all other duties incident or in any wise relating to his office as deputy sheriff, and in all respects to indemnify the said plaintiff against all debts, interest, costs and damages which he may incur in consequence of the official acts of said deputy; that the said deputy proceeded to act as such, and continued to hold the said office during the plaintiff's sheriffalty; that during the period a large amount of executions were placed in said deputy's hands, and a large amount of taxes, county levies, parish assessments, fines and forfeitures were intrusted to him for collection and accountability. He then charges that since the termination of his office, he had endeavored to bring the said deputy to a settlement of "these multifarious and intricate matters of account, but had been unable to accomplish any such settlement." He further charged that there was due from said deputy to him, in the first year of

COURT OF APPEALS OF WEST VIRGINIA.    35

July Term,               Lafever vs. Billmyer et al.               1871

the sheriffalty, upwards of two thousand dollars, and in the last year about three thousand dollars, which, with the interest, made considerably upwards of seven thousand dollars due plaintiff; that it was obvious that the matters involved in the settlement, between plaintiff and said deputy, "involve matters of detail of the most multifarious and intricate character, such as it would be impracticable for a jury to act upon in the ordinary common law trial without incurring the risk of doing the grossest injustice to plaintiff and said deputy, that it was obvious in the progress of the investigation it would be necessary to look carefully into the books of the said deputy, and appeal to his conscience for information necessary to throw light upon these accounts." The bill then closes with the prayer that the deputy and surviving sureties, and the administrator of the estate of Solomon Billmyer, deceased, be made parties defendant, &c., and "particularly that the said John T. Billmyer may be required on oath to give a fair and full detailed account of his actings and doings as deputy sheriff during the two years aforesaid so far as the collections, receipts and disbursements of the moneys intrusted to his agency are concerned;" that he be required to produce all his books, accounts and vouchers, and show what money he has received and how the same has been applied; that plaintiff have decree against said John T. Billmyer and his sureties for the amount due him, and that a master commissioner state and settle the accounts between plaintiff and defendant. The said bond was made an exhibit with the bill. The defendants demurred to the bill, and the court properly sustained the demurrer, and leave was given the plaintiff to file an amended bill. That the bill was demurrable, the plaintiff seemed convinced of, as the record says, "by consent of plaintiff the demurrer is sustained." The plaintiff filed his amended bill March 29th, 1869, in which he alleges that he intended to accompany his original bill with an account setting forth in detail the breaches by the said John T. Billmyer, of the condition of his bond, which was omitted accidentally as an exhibit, and which omission he now supplied. He then charged, in the amended bill, that said Billmyer did not faithfully account for the taxes imposed by law in the district committed to his charge for the year

1859, nor collect the county levies and parish assessments, and account and pay the same in such manner as the law directs; nor collect and account for all fines, forfeitures and amercements accruing to the Commonwealth in said district; nor account for the officers' fees; nor collect and account for the executions placed in his hands, but wholly neglected and refused so to do; whereby plaintiff was compelled to advance and pay for him for official breach of trust, on account of the revenue licenses, taxes, county claims, &c., the sum of two thousand and sixty dollars and ninety cents for the year 1859. That the said defendant did not faithfully account for the taxes in his district for the year 1860, but failed to account for and pay the same to the plaintiff or to the Commonwealth of Virginia; whereby the plaintiff was compelled to advance and pay the same, and did pay into the treasury of the State, for taxes which should have been accounted in said district, the sum of eleven thousand eight hundred and ninety-five dollars and twenty-nine cents. That said defendant had failed to account for the license tax for that year; for muster fines which he should have collected and accounted for; for road orders which he has failed to account for, and that the plaintiff has thus been compelled to advance to the State and other creditors entitled to receive said moneys, the sum of three thousand and thirty-eight dollars and seventy-seven cents for the year 1860; that he filed his account so far as he had ascertained the liabilities and been compelled to pay them, exhibiting the default of said deputy, together with the credits to which deputy was entitled so far as plaintiff knew them. Plaintiff then avers " that he is threatened with notices for sundry other pecuniary liabilities, growing out of the default, malfeasance and breach of trust of said deputy, in the settlement of administration accounts placed in his hands, which makes it a matter of the highest importance to your orator that there shall be a fair, full, and complete and final settlement between your orator and his deputy of the trust and agency in which he was employed, that orator may know the full extent and measure of his liability for his official acts, and to' make the necessary preparation to meet them;" that plaintiff had sought in all fair and friendly way to obtain all necessary informa-

tion from said Billmyer, and to have settlement with him of the important and responsible trust which was confided to him, but he refused to give plaintiff this information, or to make with him the settlement which justice and equity requires. Then follows the prayer for parties, and that said Billmyer be required to render a fair, full and detailed account of the trust and agency confided to him as deputy, and that decree be rendered against said deputy and his sureties for the amount found due to plaintiff; and ends with the prayer for general relief. With said bill, the account therein designated, was exhibited. The defendants filed a demurrer to said bill as amended. (1.) To the jurisdiction, the remedy being at law and not in equity. (2.) To the substance of the bill, as without equitable grounds and not intelligible. The case as presented to us stands on the demurrer to the bill as sustained by the circuit court. The question is, Did the circuit court err in sustaining the demurrer? The plaintiff, to sustain his bill, cited 1 Story Eq. Jur. S., 451, showing that courts of equity have concurrent jurisdiction with courts of law in matters of account, and that the machinery of courts of equity is better adapted to the purpose of an account in general, to do entire justice between the parties, than courts of law; and that it is the principle upon which courts of equity constantly act, by taking cognizance of matters which, though cognizable at law, are yet so involved with a complex account, that it cannot be properly taken at law; and until the result of the account is known, the justice of the case cannot appear, and that one of the grounds of jurisdiction is the right of a court of equity to compel a discovery. He also cited *Nebergall* vs. *Tyree*, 2 W. Va., 476; which was an action by a surety of the principal sheriff against the deputy sheriff, to recover back money paid by said surety on a judgment obtained against him by Wilson, for the amount of an execution which said deputy had collected and failed to pay over. In that case the court held that § 42 chap. 49, Code 1860, gave "the plaintiff the right to recover from the defendant, in a summary way, by motion, and it would be strange indeed if he could not recover on the same facts in this action." The court further held that if said section "did not exist, the plaintiff would have a plain right to

recover on the facts of his case, on the broad principle of natural justice." It was argued by the appellant in this appeal, when citing Nebergall's case, that as said section, by giving a summary remedy by motion, did not deprive Nebergall of his action at law, it was reasonable to conclude it did not deprive the plaintiff, in this cause, of his right to go into equity for account; in other words, equity retained its concurrent jurisdiction, and the plaintiff could elect that from which gave most ample relief. The appellant also cited *Mosby's adm'r et al.* vs. *Mosby's adm'r,* and *Miller* vs. *Jones et al.,* 9 Gratt., 602 (involving liability of sheriff for acts of deputy where administration of decedent's estate was cast upon him), in which the court held, "that a sheriff is liable *civiliter,* though not *criminaliter,* for all the acts of his deputies, *colore officii.*" The appellant argued from that authority, that he had the right to maintain his bill against the deputy, Billmyer, for an account from him of the matters of administration of the various estates of decedents, which had gone into the hands of said deputy *virtute officii,* and which, among other matters, he had failed to account for. Account is a settled head of equitable jurisdiction, (*Smith* vs. *Marks,* 2 Leigh, 450). But one of the most difficult questions, arising under this head, is to ascertain the true boundaries of equity jurisdiction in such matters of account as are cognizable at law (1 Story Eq. Jur., § 454); for where there is a remedy at law, the authorities, both English and American, seem through their confusion and conflict, to deliver over the subject to interminable doubts (2d § 455). Seeking there for a light amid the chaos of authorities, we encouragingly turn to the opinion of Chief Justice Marshall, in the case of *Fowle et al.* vs. *Lawrason,* 5 Peters, 494 and 502 (in which the plaintiff's bill asked for the settlement of complicated accounts by a court of chancery). The learned Chief Justice said : " That a court of chancery has jurisdiction in matters of account cannot be questioned, nor can it be doubted that this jurisdiction is often beneficially exercised; but it cannot be admitted that a court of equity may take cognizance of every action, for goods, wares and merchandize sold and delivered, or of money advanced, where partial payments have been made, or of every contract, express or implied, consisting of

various items, on which different sums of money have become due, and different payments have been made. Although the line may not be drawn with absolute precision, yet it may be safely affirmed that a court of chancery cannot draw to itself every transaction between individuals in which an account between parties is to be adjusted. In all cases in which an action of account would be the proper remedy at law, and in all cases where a trustee is a party, the jurisdiction of a court of equity is undoubted. It is the appropriate tribunal. But in transactions not of this peculiar character, greater complexity ought to exist in the accounts, or some difficulty at law should interpose, some discovery should be required, in order to induce a court of chancery to exercise jurisdiction. 1 Mad. Chan., 86; 6 Ves., 136; 9 Ves., 437. In the case at bar these difficulties do not occur. The plaintiff sues on a contract by which real property is leased to the defendant, and admits himself to be in full possession of all testimony he requires to support his action. The defendant opposes to this claim, as an offset, a sum of money due to him for goods sold and delivered and for money advanced, no item of which is alleged to be contested. We cannot think such a case proper for a court of chancery." And Mr. Justice Story, after collating the authorities, says: "It may be laid down as a general doctrine, that in matters of account, growing out of privity of contract, courts of equity have a general jurisdiction where there are mutual accounts, (and *a fortiori*, where these accounts are complicated,) and also where the accounts are on one side, but a discovery is sought, and is material to the relief. And, on the other hand, where the accounts are all on one side, and no discovery is sought or required; in all such cases courts of equity will decline taking jurisdiction of the cause." Story's Eq. Jur., § 459, and notes. In the case of *Tyler and als*, vs. *Nelson's adm'x*, 14 Gratt., 214 and 219, cited by the appellant, to sustain his bill in this case; the learned judge who delivered the opinion of the court, said: "The case is one essentially for an account. It involves the transaction of the deputy as the acting administrator of three several estates. The settlement of the accounts was of course to be made upon the same principles which would govern, if the settlement were made in suit by creditors or distributees,

against the sheriff himself as administrator, because the deputy and his sureties would be liable to the sheriff in the same amount for which he was liable to those entitled to call him to account. And that the sheriff might have had a remedy by an action on the bond, should not in this case exclude the equity jurisdiction. The remedy at law could not be as ample and complete as in equity. The accounts could not be as well settled by a jury as by a commissioner in chancery; and although there had been an *exparte* settlement made in each case, yet it might still be shown upon a settlement under the order of the court, that the amounts really due and for which the high sheriff would be liable, were greater or less than those ascertained upon those *exparte* settlements.      *  .      *      *      *      *      *      *
Moreover, it might turn out (as indeed it will appear in the sequel it did turn out,) that whilst the deputy might be liable upon all three accounts, as claimed, the sureties might be liable for part only. But the law court could of course only give one judgment in the case, and that for the amount due from those jointly bound; whilst the court of equity could adjust the several liabilities and decree against the deputy separately, as well as against him and his sureties jointly, according to the ascertained liabilities; and thus to a certain extent multiplicity of suits by the sheriff for the shortcomings of his deputy would be avoided. In these views I think the jurisdiction of the court is vindicated." The other judges concurred in the opinion. It seems to me that the views, thus given at length, of such eminent jurists, cannot be ignored, and that they conclusively settle the doctrine that courts of equity have jurisdiction of matters of account (1) where there are mutual demands, and *a fortiori* when complicated, (2) where the accounts are on one side and a discovery is sought that is material to the relief, and (3) equity having taken jurisdiction for discovery, will, to avoid multiplicity of suits, administer suitable relief. The reason for the doctrine is, not that the law affords no remedy, but that it is more complete and adequate in equity. By virtue of this general jurisdiction, and as incident to accounts, courts of equity take a concurrent cognizance, among many other things, not only of the administration of personal assets, and

distribution of the residue, but also of the conduct of executors and administrators. (3 Black. Comm. 437, cited in 1 Story Eq. Jur., § 453.) But it is equally as well settled that courts of equity decline jurisdiction in matters of accounts, (1) where the demands are all on one side, and no discovery is claimed or necessary. (2) Where on one side there are demands, and on the other mere payments or set-offs, and no discovery is sought or required. The reason is, that the peculiar remedial process or functions of a court of equity are not necessary in such cases, (1 Story, 3 Eq. Jur., § 450,) there being ample remedy at law. Such being the general doctrine, even without the special view of trust and agency, as intimated in the argument, it seems reasonable on principle, that there may be cases where the principal sheriff should seek and receive equity jurisdiction in matters of account with his deputy; and especially in cases where administrations of decedents' estates have been cast upon him, and the deputy undertook the administration thereof and failed so to account. But in all cases the court should examine critically the statements of the plaintiff's bill, to see that they come within the rule of equity pleading, that the statements should be clear, direct and positive as to all matters necessary to support the plaintiff's equity; for it is absolutely necessary that such a convenient degree of certainty should be adopted as may serve to give the defendant full information of the case which he is called upon to answer. Such is the rule laid down by the elementary writers, and is sustained by authority. It has also been held, " That if there be a bill for an account in respect of particular items, or any number of particular items, and the plaintiff fails in sustaining the demand upon those particular items, and the bill happens to contain a general vague charge that there are voluminous and intricate accounts between the parties, and which charge is inserted merely as a pretext for the purpose of bringing the case within the jurisdiction of a court of equity, the court, in so vague and uncertain a case, will disregard that general allegation, will consider it as struck out of the bill, and not allow it to protect the bill against a demurrer for want of equity." (1 Story's Eq. Jur., § 458 a, and note 3.) I think, therefore, it may be laid down as a

general principle, that if a bill shows on its face that the specific account can be fairly taken in a court of common law, and the bill contains vague and general statements of transactions outside of the specific account, those statements will be considered merely as a pretext for transferring the jurisdiction from a court of law to that of equity, and in such a case a court of equity will sustain a demurrer to the bill. Applying these principles and rules to the bill before us, the court below did right in sustaining the demurrer. The account exhibited with the plaintiff's bill shows upon its face no complexity, but a plain statement of a definite amount of money advanced, with a definite amount credited. In fact, it is just such an account as a court of law can give a complete and adequate remedy for. As to the averments in the bill, "It is obvious," &c., and "It is also obvious," &c., may be rejected as not direct allegations but argumentative. The allegation that he "is threatened with notices upon executions placed in the hands of said deputy, which the defendants in said executions aver that they have paid to said Billmyer, but no evidence of which payments appear upon the executions themselves, and threatened with notices for sundry other pecuniary liabilities, growing out of the default, misfeasance and breach of trust of said deputy in the settlement of administration accounts placed in his hands," &c., is not sufficient to inform the defendants distinctly of the matters said deputy is called upon to answer to and defend. The plaintiff had full knowledge who were the parties that made the threats. It was therefore his equitable duty to have designated them and their specific claims, in order that the defendants could have distinctly answered. They should not be required to respond to such vague and indefinite averments. In all those matters of execution and administration, the records would enable the plaintiff to designate, with absolute certainty, the parties and their claims; and equity will not excuse such vague and indistinct pleading under such circumstances. The court below, therefore, properly sustained the demurrer, and the judgment should be affirmed with costs.

The other judges concurred.

ORDER AFFIRMED.