## CHARLESTON.

YATES *et al* v. STUART'S ADM'R *et al.*

(DENT, JUDGE, Absent.)

Submitted June 12, 1893.—Decided March 24, 1894.

1. EQUITY—JURISDICTION—LOST INSTRUMENT—DISCOVERY.
   Courts of equity have jurisdiction, where a lost instrument is

set up, and the discovery sought in relation thereto is material to the relief. (p. 134.)

2. Equity—Jurisdiction—Discovery.

Courts of equity have jurisdiction of matters of account, where the accounts are all on one side, yet a discovery is sought that is necessary to the relief. (p. 127.)

3. Equity—Jurisdiction—Discovery.

Equity having properly taken jurisdiction for discovery, will to avoid multiplicity of suits administer suitable relief. (p. 130.)

4. Co-Defendants—Decree.

A decree may be made between co-defendants, where the equities between them arise out of the case as made by the pleadings and proof between the plaintiff's and defendants. (p. 139.)

J. T. McGraw and W. R. D. Dent, for appellant cited 26 W. Va. 437.

Stuart and Farr for appellee Stuart's administrator:

I.—*As to remedy at law.*—1 Lom. Dig. (2 Ed.) 717.

II.—*As to office of petitions.*—Rule 1, 23 W. Va. 818.

III.—*As to notice by Com.*—Code 1887, s. 4, c. 129 ; 13 W. Va. 441.

IV.—*Court has a right to re commit cause.*—Code, c. 129, s. 3.

V.—*As to commissioner's right to refer question to court.*—Code, c. 129, s. 6.

VI.—*As to ambiguity of contract.*—26 W. Va. 460 ; 31 W. Va. 70 ; 18 Gratt. 1.

VII.—*As to parties right to ratify or reject contract.*—Smith's Mer. Law, 138, § 5.

VIII.—*As to Stuart's liability if he contracted in his own name for known and responsible parties.*—Smith's Mer. Law, 144.

IX.—*It is a question of fact.*—Same authority, 146.

X.—*As to what part of contract is to be considered in construing it.*—2 Pars. Cont. 501-503, 648, 649.

XI.—*As to subrogation.*—4 Rand. 447; 1 Bart. Ch'y Pr. 78, 79 ; 2 Bart. Ch'y Pr. 1051, 1053.

XII.—*As to statute of frauds.*—Code, c. 98, p. 698.

XIII.—*As to weight of answer on bill of discovery.*—7 W. Va. 707.

XIV.—*As to answer being evidence against party filing same.*—1 Greenl. Ev. s. 178.

XV.—*As to Stuart being trustee of two firms.*—Story, Part. §§ 174, 175.

XVI—*As to action of one partner.*—99 Am. Dec. 520.

FRANK WOODS and B. F. MARTIN for appellee Yates:

I.—*Equity has jurisdiction.*—2 Leigh 6; 3 Pom. Eq. § 144; 21 Gratt. 266; 14 W. Va. 22; 1 Pom. Eq, § 280; 1 Sto. Eq. Juris. §§ 81, 84.

II.—*Error must be to the prejudice of appellant or decree will not be reversed.*—15 W. Va. 804; 26 W. Va. 764; 27 W. Va. 229.

HOLT, JUDGE:

This is a suit in equity, brought in the Circuit Court of Taylor county in November, 1884, by J. W. Yates and others against Chapman J. Stuart and others, upon a lost contract of lease, for discovery of balance due plaintiffs thereon, for an account to ascertain the true balance, and a decree for the same. Defendant Chapman W. Stuart appeared and answered, and, having died during the pendency of the suit, it was revived against his administrator, W. S. Stuart, who also answered. Floyd Neely also appeared and filed his demurrer and answer. None of the other parties defendant appeared or answered; and the bill as to them was taken as for confessed. By order of April 1, 1885, the cause was referred to Commissioner W. R. D. Dent to take an account. On March 20, 1888, it was referred to Commissioner Joseph Marum; and on March 26, 1889, by an order reciting that Commissioner Dent had not completed the order of reference, it was referred to Commissioner Z. M. Cochran. On July 25, 1889, the demurrer of defendant Floyd Neely was overruled, and the answer of defendant C. J. Stuart was withdrawn, and his administrator, W. S. Stuart, demurred to the bill. On November 11, 1889, the cause was heard on the report of Commissioner Cochran and exceptions thereto, and the court without passing on the exceptions again referred the cause to one of its commissioners. This order was executed by Commissioner La Fallette with consent of parties. On April 24, 1890, the demurrer of W. S. Stuart was over-

ruled, and the answer of C. J. Stuart was again filed; also the answer of his administrator. Commissioner La Fallette's report was completed and returned, to which defendant Neely filed fifteen exceptions, and W. S. Stuart, administrator of C. J. Stuart, filed nine exceptions; and the cause, on May 21, 1890, came on for hearing on this report, and exceptions thereto and other papers when the court pronounced a final decree overruling some exceptions, sustaining others, and, as thus modified, confirming Commissioner La Fallette's report, and giving a decree against C. J. Stuart's estate and Michael Donahue, surviving partner of the firm of Stuart & Donahue, and against Floyd Neely and Luther Martin, late partners composing the firm of Neely & Martin, in favor of plaintiffs Jedediah W. Yates, Emily Mackin, and William D. Mackin, for the sum of one thousand six hundred and seventy two dollars and sixty five cents, with interest from date of decree and costs, with leave to sue out executions.

And the court, being of opinion that none of the defendants were liable as individuals, dismissed the bill as to them individually, but also adjudged that, as between the two firms decreed against, viz: Stuart & Donahue and Neely & Martin, they were, as to each other, equally liable for the payment of the said sum decreed against them for rent—that is to say Stuart & Donahue one half, and Neely & Martin the other half; but as between said two firms, said sum decreed plaintiffs, viz. one thousand six hundred and seventy two dollars and sixty five cents, the same was wholly due from the firm of Neely & Martin, and no part from the firm of Stuart & Donahue; and that to the extent that W. S. Stuart, administrator, and M. Donahue, surviving partner, paid to plaintiffs said sum of one thousand six hundred and seventy two dollars and sixty five cents decreed against them, leave was given them to apply to the court in this cause thereafter to enforce payment thereof over against Neely & Martin. From this decree Floyd Neely the only appellant, on October 1, 1891, obtained this appeal.

Appellant Neely's first assignment of error is, that the court erred in overruling his demurrer to plaintiff's bill, as

the 'remedy at law was complete and adequate. This is the principal ground discussed and relied on in their brief by defendant Neely's counsel; and they cite and rely on *Grafton* v. *Reed*, 26 W. Va. 437, 439.

There is no doubt that courts of equity have jurisdiction concurrent with courts of law in matters of account, where the accounts are mutual and complicated ; also where they are all on one side, if discovery is sought and is material to relief; but when the mutual accounts are not complicated, or the accounts are all on one side, and no discovery is required, courts of equity will decline jurisdiction. This comprehends about all that can be definitely said upon the subject, where the demand is a legal one, and does not involve any other ground of equitable jurisdiction. If, therefore, the bill alleges specific facts, which, if true, clearly and definitely show the accounts to be so complicated, or of such character, for any reason, that the remedy at law must be inadequate, as compared with the facilities furnished by a court of equity for ascertaining the rights of the parties, the demurrer will be overruled. If, on the other hand, the plaintiff contents himself with a mere statement that the accounts are complicated, and the remedy at law inadequate, or that some discovery is required from the defendant, such general statements will be considered as merely colorable, and as not sufficient to support the jurisdiction of a court of equity, and the demurrer will be sustained. See *Grafton* v. *Reed*, 26 W. Va. 437, 440. It is therefore a matter of relative convenience and facilities for ascertaining the rights of the parties in such cases of account for legal demands that determines courts of equity in entertaining or rejecting such applications to them for relief, and the court must be able to see for itself from the facts alleged that the remedy at law would not be plain, adequate, and complete; it can not accept the plaintiff's opinion; it must have facts sufficient to justify such interference.

The first case on the subject is *Hunter's Ex'r* v. *Spotswood* (1792) 1 Wash. (Va.) 145. Tate, in his Digest (volume 1, p. 10 [1847]), gives the point decided as follows: "Equity has jurisdiction to enforce the settlement of a long and

complicated account between different persons, and being so that to obtain justice all the parties must be before the court." This is taken from the argument of Washington, counsel for appellee (afterwards a Justice of the Supreme Court of the United States) citing 1 Eq. Cas. Abr. 5; Marshall (afterwards Chief Justice of the Supreme Court of the United States) of counsel for appellant, saying that the objection to the jurisdiction was not relied upon. The court was just about to deliver an opinion, when it was observed by Mr. Marshall that it did not appear in the record or by the decree that the order of publication against defendant Campbell, who was proceeded against as an absent debtor, had been executed; and the court for this reason only reversed the decree, and sent back the cause, and it was afterwards, on appeal to the Special Court of Appeals, affirmed *in toto.*

As to discovery, see *Bass* v. *Bass,* 4 Hen. & M. 479. *Smith* v. *Marks,* 2 Rand. (Va.) 449, was decided in 1824. Judge Carr, delivering the opinion, discusses the subject, citing with approval *Dinwiddie* v. *Bailey,* 6 Ves. 136; *Corporation of Carlisle* v. *Wilson,* 13 Ves. 279; and *Porter* v. *Spencer,* 2 Johns. Ch. 169; and holding that there must be mutual demands—not a single matter, but a series of transactions. "The principle of interference is that courts of law either can not give a remedy, or can not give so complete a remedy as equity."

In *Hickman* v. *Stout* (1830) 2 Leigh, 6, it was held that a court of equity had jurisdiction, because the bill states mutual accounts between the parties, running through a series of years, and consisting of numerous items ; and, although the bill also sought discovery, but without considering that point, the first was considered as sufficient to support the jurisdiction, and that the demurrer was properly overruled ; for, although the plaintiff had a legal title, and might have brought *assumpsit,* yet such remedy would not have been so complete as that given by a court of equity. See *Poage* v. *Willson,* 2 Leigh 490 ; also *Trustees* v. *Manson,* 4 Rand. (Va.) 197.

*Sturtevant* v. *Goode* (1834) 5 Leigh, 83, was very much like one feature of the case in hand. In that case the de-

fendant had the contract in his possession and refused to produce the original and also to furnish copies. The court held it to be a case properly relievable in equity, to cause the contract to be produced, and then the account to be taken.

In *Bassett's Adm'r* v. *Cunningham's Adm'r* (1836) 7 Leigh, 402, there was a vague general statement that the transactions between plaintiffs' intestate and defendant's intestate were so complicated and multifarious that a jury could not settle them, but no facts were alleged or shown by which the court could judge for itself as to such complication ; and, as far as there was any definite allegation of fact, it only showed that defendant had bonds, and defendant's intestate had made payments, being made up of demands on one side and payments on the other, not of mutual demands. The court held that the demurrer should have been sustained for the vagueness and looseness of the case stated, and that equity had no jurisdiction of such a case.

In *Tyler* v. *Nelson's Adm'x*, 14 Gratt. 214, 220, one of the reasons given for the exercise of jurisdiction by a court of equity in account is that the court of equity can adjust the several liabilities of the parties, and decree against them accordingly, and thus to a certain extent avoid multiplicity of suits.

In *Coffman* v. *Sangston* (1871) 21 Gratt. 263, it is held that courts of equity have jurisdiction in matters of account involving the transaction and dealings of trustees and agents wherever it appears that a discovery is necessary, or there are mutual accounts between the parties, or the remedy at law is not plain, simple and free from difficulty.

As to discovery as an independant ground of equitable jurisdiction where it would not otherwise exist, see 1 Pom. Eq. Jur. § 223 *et seq.; Ely* v. *Crane*, 37 N. J. Eq. 157.

In *Lafever* v. *Billmeyer*, (1871) 5 W. Va. 33, the subject was fully discussed by Judge MOORE, and it was held that courts of equity have jurisdiction of matters of account (1) where there are mutual demands, and, *a fortiori*, when they are complicated; (2) where the accounts are on one side, and a discovery is sought that is material to the relief; (3) equity, having taken jurisdiction for discovery, will, to

avoid multiplicity of suits, administer suitable relief. Courts of equity decline jurisdiction on matters of account (1) where the demands are all on one side, and no discovery is claimed or is necessary; (2) where, on one side, there are demands, and on the other mere payments or sets-off, and no discovery is sought or required. The court held that the account exhibited with plaintiff's bill showed upon its face no complexity, but a plain statement of a definite amount of money advanced with a definite amount credited; and, as to the allegations in the bill that the accounts were voluminous and intricate, the court will not permit such a vague charge to protect the bill against demurrer for want of equity.

In *Petty* v. *Fogle* (1880) 16 W. Va. 497, there is a full review of authorities by Judge HAYMOND, the court approving of the doctrine laid down in *Lafever* v. *Billmyer, supra,* but that it does embrace all the cases as to matters of account in which equity should or should not take jurisdiction, and that no general rule embracing all cases can be safely laid down.

In *Bank* v. *Jeffries,* (1883) 21 W. Va. 504, it was held that the cashier of the bank will, in a court of equity, be held to be a trustee, and compelled to account; but the bill was too vague and indefinite in its statements of liability, if any, on the part of the cashier, to require the defendant to answer. See *Tiller* v. *Cook,* 77 Va. 477; *Goddin* v. *Bland,* 87 Va. 708 (13 S. E. Rep. 145).

The common-law action of account as enlarged so as to embrace the personal representative of any guardian or receiver, also one joint tenant or tenant in common, *etc.,* being in substance the act of 4 Anne, c. 16, § 27, is still the law of this state. See Code W. Va. (Ed. 1891) p. 721, c. 100, s. 14; *Dobson* v. *Hays,* 29 W. Va. 577, 600 (2 S. E. Rep. 415); *Ruffners* v. *Lewis's Ex'rs,* 7 Leigh, 720. By chapter 57 of Acts of 1882, commissioners in chancery are made auditors where in any case at law the court may direct them to take and state an account between the parties. See Code (Ed. 1891) p. 820, c. 129, s. 10.

The result of these authorities is that courts of equity entertain suits for an account, where it is incident to other

equitable relief, as where the subject-matter is an equitable interest or estate; and this embraces that large class of cases involving trusts and fiduciary relations generally. But, where it involves legal titles and rights, where the matter of account is cognizable at law, then the court must be able to see for itself, from facts definitely alleged, that the plaintiff has a right to have an account rendered, or that the remedy at law is not plain, adequate or complete; reserving to itself a large discretion, in the exercise of which it will pay due regard to the nature of the case and the situation and conduct of the parties. See *Grafton* v. *Reed*, 26 W. Va. 437, 439. See *Uhlman* v. *Insurance Co.*, 109 N. Y. 421 (17 N. E. Rep. 363); *Printup* v. *Mitchell*, 17 Ga. 558.

It is understood to be the law in this state that courts of equity have acquired concurrent jurisdiction in all matters of account in which the common-law action of account may be brought. See 3 Bl. Comm. p. 437; *Ludlow* v. *Simond* (1805) 2 Caines's Cas. 1. Here the question is—: Does the plaintiff show himself entitled to have an account rendered?— for the first common-law judgment is *quod computet* without the necessity of plaintiff setting forth his statement of the mutual accounts. See 3 Hammond, Bl. Comm. p. 614, note 77. And in similar cases, and for the like reason, where plaintiff has a right to have an account rendered by defendant, equity has jurisdiction where the common-law action of account does not lie.

There are four plaintiffs who file this bill, and the substance of it is as follows: Plaintiffs are and were in 1870 the owners of a large tract of land in West Grafton, Taylor county, W. Va., situate on Tygart's Valley river, and between the river and the N. W. Va. R. R. Defendant Chapman J. Stuart, in May, 1873, leased said land of plaintiffs for a period of ten years at the annual rent of four hundred dollars per year. The lease was reduced in writing, and signed by plaintiffs and the said Stuart, and was in every way properly executed and delivered by plaintiffs to Stuart, who deposited it with Thomas E. Davis of West Grafton for safe-keeping, from whose possession it was afterwards taken by Stuart or his agent; and the same is now in the possession of Stuart. Plaintiffs have no copy of the lease;

nor have they seen it since its execution; nor have they any means, they allege, of ascertaining its contents, or obtaining a copy, without the interposition of the court. The lease was in the name of Stuart alone, and plaintiffs regarded him as contracting in his own behalf, and knew nothing at that time of any other persons sharing or claiming to share in the lease with Stuart, as Stuart at the time gave no intimation that he was not the sole principal. After the lease had been entered into, and was in every way binding and complete, they then discovered that Stuart in taking the lease, claimed to be and was merely the agent of the firm of Neely & Martin, composed of Floyd Neely and Luther Martin, and of the firm of Stuart & Donahue, composed of Chapman J. Stuart and Michael Donahue, and that he was merely the agent and trustee of these two firms in taking and executing the lease; and this fact did not become known to plaintiffs until after the lease had expired; and plaintiffs aver that said firms are, by virtue of such agency, jointly and severally liable for the rent due them on the lease. The firms of Stuart & Donahue and Neely & Martin took possession of the land and river front for locating and operating their mills, storing logs, lumber, *etc.*, during the term of the ten years contracted for and demised by the lease and in accordance with the terms thereof, and have admitted themselves to be tenants holding under and by virtue of the lease taken in the name of Stuart, and during the said term of ten years; and that said lease had been in the name of Stuart alone through inadvertance; and that they, the said two firms, were in fact the principals, and it had been assigned to them; and that they are liable for the rent by virtue of their agreement with Stuart, and have acknowledged such liability, and have made many payments upon the lease. Said two firms and others for them have made fifty and more payments on the lease, some to one plaintiff, some to another, some by the firm of Stuart & Donahue, some by the firm of Neely & Martin. Plaintiffs gave receipts for such payments, but kept no account of them, but relied upon said receipts thus given as showing the money paid by each, and the respective dates and amounts, as showing the amounts paid and the amount due

on final settlement. Plaintiffs have frequently applied to said firms, and the members thereof, for a statement of their receipts and payments, but they refused to furnish the same. A large sum is still due, but the amount can not be ascertained without the discovery prayed for.

They then pray that Stuart discover and produce the lease, and that Stuart and each of the firm answer, and file their respective receipts for rent paid on the lease, *etc.*, and that the cause may be referred to a commissioner to take an account of what is due from defendants to plaintiffs, and the amount due decreed them, and for general relief, *etc.* On this point the bill charges, in substance, that Stuart took said lease for the benefit of the firm of Stuart & Donahue and the firm of Neely & Martin, and that Stuart turned over the lease and its privileges thereto attached to the two firms, which firms agreed with Stuart to pay plaintiffs the rent; that, in pursuance thereof, they entered upon and held and used the premises during the term of ten years, acknowledged themselves to plaintiff's to be jointly and severally liable therefor, and during the time, made fifty odd payments to plaintiffs on the rent, leaving a large balance unpaid.

Plaintiffs allege that this promise, arrangement or agreement of these two firms to pay this rent to them was made between them and Stuart for their (the plaintiffs') benefit, and said firms acknowledged the same, and in part performed it: and it is this lease that was taken out of the possession of Davis, the bailee, by Stuart or his agent, that plaintiffs pray may be produced, and that the defendant firms may answer fully in what manner they acquired the right to said lease thus turned over to them, and in what capacity Stuart acted in making the lease, and to exhibit their receipts for rent paid on the lease.

I do not regard the case as coming within the doctrine laid down in *Borcherling* v. *Katz* (1883) 37 N. J. Eq. 150; *Walters* v. *Mining Co.*, 5 De Gex, M. & G. 629; *Cox* v. *Bishop*, 8 De Gex, M. & G. 815—and cases of that class; for in this case there was privity of estate, and the statute gives plaintiffs the benefit of and right of action on the promise or agreement, if any, made between these firms

and Stuart for the payment to the plaintiffs of the rent (see section 2, c. 71, Code [Ed. 1891] p. 633); and, having applied for the lease or a copy, and being refused, this fact with the others gave a court of equity jurisdiction (*Sturtevant* v. *Goode*, 5 Leigh, 83). Neither did plaintiffs know the terms or character of the agreement between Stuart and these two firms, by which they were to pay the rent, or how such payment was to be apportioned between them; and plaintiffs sought a discovery of how and to what extent these two firms were interested in the lease, and in what manner they acquired such right, as essential to their relief in regard to the rent plaintiffs alleged to be due them. Nor could they tell how much rent was still due from these firms nor how the balance should be apportioned between them without taking the account prayed for; and having to come into this court in order to discover the contract and its terms complete justice could not be done without taking an account, showing the several payments made by these two firms on account of such rent. It is not alleged that the lease is lost, but that it is no longer in the possession of Thomas E. Davis, with whom it had been deposited for safe-keeping; that it was afterwards taken from his possession by Stuart or his agent, in whose possession plaintiffs are informed and believe said lease now is. Plaintiffs have no copy, have not seen it since its execution, and are unable to secure a copy.

It is well established that equity has jurisdiction where a lost instrument is to be set up, especially where discovery is necessary, notwithstanding courts of law now exercise jurisdiction in the same cases; and that in such a case a court of chancery, having taken jurisdiction for one purpose, will adjudicate the whole merits of the case. *Hickman* v. *Painter*, 11 W. Va. 386; *Mitchell* v. *Chancellor,* 14 W. Va. 22. It turned out as a matter of fact that the lease was lost or mislaid, and could not be found; and the court would hardly send the cause back for such a charge to be explicitly made in the bill. There was, however, no controversy as to its terms, as it was recited substantially in the contract of June 25, 1873, between the members of the two firms of Stuart & Donahue and Neely & Martin. There

was, therefore, no error in overruling the demurrer of defendant, Floyd Neely to plaintiff's bill, and requiring him to answer.

Thereupon defendant Floyd Neely filed his answer, to which plaintiffs replied generally. His answer is, in substance, as follows: He denies all allegations of said bill that in any manner seek to attempt to connect himself or the firm of Martin & Neely with the contract of Chapman J. Stuart with said plaintiffs, except as subtenants, or under lessees of said Stuart; and respondent insists that said Martin & Neely have fully complied with their contract with said Stuart, and that said firm never had any contract with plaintiffs; and, having answered, *etc.* The contract referred to is filed before the commissioner by Donahue as an exhibit, proved, and is as follows:

"An agreement made between C. J. Stuart, M. Donahue, Floyd Neely, and Luther Martin. Witnesseth that whereas the said C. J. Stuart, on the——day of May, 1873, leased of parties a certain tract of land lying near Grafton, adjoining the fair ground, and between the said ground and Bartlett's run, and being a part of a certain property known as the 'Yates Property,' with certain privileges thereto attached, for the term of ten years, and which lease is here referred to for more particular description, for which said lease the said Stuart was to pay four hundred dollars per year, one hundred of which he in hand paid, the residue to be paid in certain installments, which the lease fully describes: Now it is hereby understood and agreed that said lease was made by the said Stuart for the mutual benefit of the firm of Stuart and Donahue and the firm of Neely & Martin, the said M. Donahue of the firm of Stuart and Donahue and the said Floyd Neely and Luther Martin of the firm of Neely & Martin agreeing hereby to become equally responsible for the payment of said lease with the said Stuart— that is, the said Donahue one fourth, and the said Neely and Martin each one fourth—the said Stuart hereby turning over to the said firms of Stuart and Donahue and Neely and Martin the said lease with its privi-

leges.    In testimony whereof the following signatures and seals.

"C. J. STUART.    [Seal.]

"M DONAHUE.    [Seal.]

"FLOYD NEELY.    [Seal.]

"LUTHER MARTIN.    [Seal.]

"June 25th, 1873."

This contract was taken in this form in order to make it a sealed instrument on the part of each individual partner, because a partner has no implied power to bind the firm by an instrument under seal; and such an instrument was deemed desirable, because importing a consideration, and operating more effectually as an acknowledgment, and therefore as an estoppel.    This is one of the written instruments that plaintiffs called upon defendants to produce, and an important instrument it is.    (1) It recites the substance of the lease executed by plaintiffs to Stuart for the Yates property and water privileges, of —— day of May, 1873, for the term of ten years, at the rent of four hundred dollars per year.    This lease was lost or mislaid, and so could not be found and produced.    (2) It shows conclusively against the two firms of Stuart & Donahue and Neely & Martin that the lease was taken by Stuart for the mutual (joint) benefit of the firm of Stuart & Donahue and of the firm of Neely & Martin.    And the evidence shows without contradiction that these two firms, without any partition or division, went into the leased premises, and occupied and enjoyed them, recognizing plaintiffs as their landlords, and making to them payments on the rent during the whole term of ten years.    This writing and the evidence also show that the members of these two firms were equal partners in their respective firms; that Stuart never entered upon or took possession of the leased premises, was not the acting partner of his firm, but lived in a distant county.    Not only did the firms occupy the premises and pay the rents directly to the landlords, calling themselves in the receipts for rent and other transactions their tenants, but by this paper, under the seal of each member, it was so expressly acknowledged and agreed, and that Stuart stood vested with the naked legal title in the

term as their trustee; and as an individual, with no other interest. Stuart was capable of taking such legal title, and thus holding it. He was a competent trustee. 1 Perry, Trusts, § 38. These two firms were capable of taking the equitable title as *cestui que trust. Id.* §§ 60, 63. This leasehold is such property as may be the subject of a trust, for every kind of valuable property, both real and personal, that can be assigned at law, may be the subject-matter of a trust. *Id.* § 67.

There is, as we have already shown, no doubt that the firm of Stuart & Donahue were to pay half the rent, and the firm of Neely & Martin the other half. The record shows, and the court adjudges, that Stuart & Donahue have paid their half, and that there is still due plaintiffs on rent the sum of one thousand six hundred and seventy two dollars and sixty five cents; and this sum, with interest from May 21, 1890, the date of the decree, the court decrees in favor of plaintiffs against Floyd Neely and Luther Martin, late partners who composed the late firm of Neely & Martin. In this there is no error.

The court also decrees the same sum against the estate of C. J. Stuart, who died *pendente lite*, the suit being revived as to him against Winfield S. Stuart, his administrator; and this part of the decree against Stuart's estate the defendant W. S. Stuarts, administrator, assigns as cross error in his brief, and prays that the decree in that respect be set aside and affirmed as to Neely & Martin. This assignment of error is not well founded, for the record shows clearly that Chapman J. Stuart took the lease in his own name, and bound himself individually to pay plaintiffs the rent. It is true, defendants, on June 25, 1873, executed among themselves the contract already set out, but plaintiffs were no parties to it. It was an arrangement among themselves, for their own benefit, in holding and using the leased premises, and declaring who should pay and be responsible for the rent among themselves. To this the plaintiffs had no objection. It was to their benefit. But they were never called on in any way to release Stuart as the original lessee, nor did they release him directly and formally, or by any necessary implication to be drawn from

their conduct. On the contrary, their conduct and all the transactions between plaintiffs and these defendants through the whole term of ten years clearly show that they did not release, but, on the contrary and affirmatively that they did not intend to release Chapman J. Stuart, although they made no objection to the contract of June 25, 1873, as between the lessees, which was not inconsistent with their continuing to hold C. J. Stuart bound to them according to the terms of the lease. The lease commenced to run October 1, 1873, and C. J. Stuart made a payment October 20, 1873, and many of the other numerous payments are receipted for as payments made upon the leased premises as a whole—so much "on rent of mill lease," *etc.*, "on Yates land lease, made by C. J. Stuart," *etc.* So, also, the evidence of plaintiff Mackin and of C. J. Stuart's partner, M. Donahue, shows that Stuart did not regard himself as released from personal liability to plaintiffs for the rent.

The decree complained of concludes as follows: "And the court being of opinion that, as between the firms of Stuart & Donahue and Neely & Martin, said firms are, as to each other, equally liable for the payment of the rent due on the lease from its commencement—that is to say, the firm of Stuart & Donahue one half, and the firm of Neely & Martin the other half—and it further appearing from said Commissioner La Fallette's report that, as between said firms, the sum of one thousand six hundred and seventy two dollars and sixty five cents, hereinbefore decreed the plaintiffs, is wholly due from the firm of Neely & Martin, and no part thereof from the firm of Stuart & Donahue, on motion of the defendant W. S. Stuart, administrator, it is therefore further adjudged, ordered and decreed that the defendants W. S. Stuart, administrator of C. J. Stuart deceased, and M. Donahue, be subrogated to the rights of the plaintiffs, and recover back from the said Floyd Neely and Luther Martin late partners of the firm of Neely & Martin, such an amount, and to the extent that said Stuart's administrator and said Donahue, or either of them, may pay off and discharge the said plaintiff's debt of one thousand six hundred and seventy two dollars and sixty five cents, and the costs herein-

before decreed to them. And leave is given the said Winfield S. Stuart, administrator of C. J. Stuart, late partner, *etc.*, deceased, and M. Donahue, surviving partner of the firm of Stuart & Donahue, or either of them, to resort to the court hereafter in this cause, to enforce the provisions of this decree over against Floyd Neely and Luther Martin, late partners of the firm of Neely & Martin, rendered as aforesaid."

Is this decree between co-defendants erroneous? W. Stuart, administrator of C. J. Stuart, makes his answer a cross-bill against the defendant firm Neely & Martin; alleges that the firm of Stuart & Donahue have overpaid their half of the rent to plaintiffs;—that defendants Neely & Martin were bound to pay one half of said rent, which they have failed to do; and that whatever balance of rent may be due plaintiffs is due from Neely & Martin, and is their debt and liability, and not the debt or liability of Stuart, or of the firm of Stuart & Donahue, *etc.;* and they pray that whatever may be decreed plaintiffs for balance of rent on the lease may be decreed to be paid them by the firm of Neely & Martin; that there may be a decree settling the equities of plaintiffs and also of the co-defendants in this cause, construing said contract of June 25, 1873, and requiring defendants Neely & Martin to pay one half of said rent, *etc.*

To this answer there is no special reply in writing, and whether needed or not, the fact set out as the foundation of the relief thus prayed for appears from the record, and is so reported by the commissioner. The relief thus prayed for is within the scope of the original bill, and is germane to its subject-matter. It is not simply defensive, but is necessary to procure a complete determination of the matter already in litigation, and do complete justice according to the respective rights and ultimate liability of the parties; and, so far from being erroneous, is eminently proper.

There are in the proceedings some errors and irregularities, but none to the prejudice of appellant, or of such a character as to require a reversal of the decree. The suit was commenced on the 20th day of November, 1884. On the 1st day of April, 1885, the cause came on to be heard

on the bill, *etc.*, regularly matured, and taken for confessed as to all defendants except defendant Chapman J. Stuart, who appeared and filed his answer, to which plaintiffs replied generally, whereupon the court referred the cause to Commissioner Dent, to ascertain and report the amount due plaintiffs upon the lease in the bill and proceedings mentioned, *etc.* This order remained unexecuted during three years. It used to be a rule of practice that, unless an order of reference was executed, or a report was made thereon, within twelve months from the date of the order, the benefit was lost to the party who obtained it. This rule, intended to speed causes, seems to have fallen into disuse, though some commissioners report during the year the condition of causes in their hands on orders of reference. See Anon. 4 Hen. & M. 410 ; 2 Bart. Ch. Pr. 640, note.

For some sufficient reason, not stated, the court, on March 20, 1888, referred the cause to Commissioner Marum to take the account. On the 26th March, 1889, the court reciting that Commissioner Dent had not completed the order of reference heretofore made, it was ordered that the cause be referred to Commissioner Cochran, "who is ordered to execute the order of reference made April 1, 1885," who .executed the order and returned his report on November 11, 1889, to which various exceptions were taken; but the court, without passing upon the exceptions, referred the cause back to one of the commissioners of the court, not designating any particular one. It is not unusual nor improper for the court to recommit the report and exceptions thereto, without passing upon the exceptions. They may be conceded to be well taken, are expected to be obviated, and will not arise again, and some are properly referred to the commissioner. So we can not say that the court erred in failing to pass on these exceptions, and, after the re-committal, the exceptions cease to be available, unless again taken to the new report.

This order of re-committal was, by consent and agreement of parties, executed by Commissioner L. M. La Fallette. The certificate of the publisher shows that the notice of Commissioner La Fallette was published for four successive weeks, beginning on the 13th day of December,

1889, before January 21, 1890, the day fixed for opening the account. That was such notice as the order of reference directed the commissioner to give the parties, and it shows that the commissioner is mistaken in his report when he refers to it as published for the four weeks next preceding the 21st of January, 1890. The other exceptions have been already considered.

The decree complained of is affirmed.